ORTMANN, Respondent, vs. A. LEATH & COMPANY, Appellant.

*September 22—October 20, 1925.*

*Automobiles: Collision at intersection of private driveway and street: Negligence: Failure to lessen speed to avoid accident: Evidence: Contributory negligence: Attempting to cross street before approaching vehicle: Special verdict: Proximate cause referring to more than one ground of negligence.*

1. The drivers of motor vehicles approaching the intersection of a private driveway with a public street are charged with the duty of exercising ordinary care to avoid a collision.    p. 621.
2. In an action arising out of a collision between automobiles, the first question in the special verdict, relating to defendant's negligence, was subdivided into two specific inquiries, both of

which were answered in plaintiff's favor, as was also the question as to proximate cause, which referred to the first question, but later the court properly struck out the answer to one of the specific inquiries in question No. 1 because it was not sustained by the evidence. Although it became impossible to ascertain whether the finding of proximate cause depended on the specific inquiry remaining in the verdict or on the one stricken out, the entire verdict is not vitiated, as the physical facts are *held* to show a negligent failure to slacken speed and to establish proximate cause.   p. 623.

3. The fact that the truck, after striking plaintiff's car, traveled a distance of twelve feet, notwithstanding the application by the truck driver of his emergency brake, might be taken into consideration in determining both the speed of the truck and the control which its driver has exercised.   p. 624.

4. Where the driver of the truck made no effort to decrease his speed and avoid a collision until immediately before the physical contact of the two machines, he was negligent as a matter of law.   p. 624.

5. Where plaintiff made the usual and necessary observations and estimated that he had ample time to safely cross the street in front of defendant's truck, and thereafter proceeded to cross at a rate of five miles per hour, and continued at that rate until defendant's truck came in contact with him, he was free from contributory negligence as a matter of law.   p. 625.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES WICKHAM, Circuit Judge.   *Affirmed.*

The action is brought to recover damages for personal injury and for damage to an automobile. Main street, in the city of Eau Claire, runs east and west, and at the place of the accident is about twenty-six feet wide, and is intersected by a private driveway known as the Ash driveway, about twelve feet in width, running from the south to the north, and leading into and ending in Main street. Along the west line of said driveway is located the dwelling house of Mrs. Ash. North of and adjoining the property on the south of Main street is a cement walk about five feet in width, and immediately to the north and between the cement walk and the south curb of Main street is a boulevard or parkway about eight feet in width. This private driveway

is used principally by drivers, with the consent of the owner, for the purpose of delivering groceries and other merchandise to Mrs. Ash and her neighbors, and affords a short cut from the street south of Main street onto Main street.

The defendant was the owner of a certain delivery truck weighing about 4,500 pounds, and which was fourteen feet four inches in length and six feet seven inches in width. The plaintiff was engaged in operating a truck garden, and on the day of the accident was delivering his produce, with the aid of an Oldsmobile touring car about thirteen feet in length, to people living in the vicinity of the Ash driveway. He had entered the private driveway from the south, and when he arrived at the rear of the Ash residence, a distance of about thirty-nine feet from the sidewalk, he stopped to sell and deliver produce to Mrs. Ash. Thereafter he started his automobile in low, and while proceeding along the driveway towards the north he observed a number of small children engaged in coasting down a small incline, and in order to caution them he sounded his horn. None of the witnesses upon the trial, excepting the plaintiff, testified that they heard the horn. Upon arriving at the sidewalk he first looked towards the east to satisfy himself that there was no vehicle approaching from that direction, and then looked toward the west, where he discovered the defendant's employee approaching the intersection of the driveway with the truck at a distance of about one hundred feet. There is some conflict in the plaintiff's testimony as to the exact distance the truck was from him at the time he made his observation, he having fixed the same, in an adverse examination, at about thirty feet. At any rate he estimated that he would have ample time to cross to the center of Main street and then make the turn to the west in safety. Plaintiff also testified that when he first observed the truck it was operated about in the center of Main street at a rate of speed of about twenty miles an hour; that it proceeded practically along a straight line in the center of the street,

and that the driver of the truck did not decrease his speed until just before the time of the collision; that when the collision actually took place the right rear wheel of plaintiff's automobile had passed the center of Main street and the left rear wheel was on about the center of such street, and that the left side of defendant's truck struck his automobile between the running board and the rear left wheel, where the two vehicles became interlocked; that it shoved plaintiff's machine a distance of about twelve feet. Plaintiff also testified that he traveled the entire distance with his automobile at a rate of five miles per hour; that when he first observed the truck approaching he held out his left hand and continued so to do until the time of the collision, operating the steering wheel with his right hand. Plaintiff charged the defendant with operating his truck at an excessive rate of speed, with failing to reduce the speed, failing seasonably to apply his brakes, and with failing to keep a proper lookout.

Ducette, the driver of the truck, testified that when he first observed plaintiff's automobile it had reached the south curb of Main street with its front wheels, and that at that time he was about thirty-six feet west of the driveway. In his deposition, taken before trial, he fixed such distance at fifteen feet, but claims that some time subsequent to the collision he viewed the premises and made measurements, and that his testimony upon the trial was substantially correct. That when he first observed the plaintiff's car the truck was operated at the rate of about twelve miles per hour, and was proceeding toward the east a little to the south of the center of Main street; that upon observing the plaintiff he reduced the speed of the truck to about eight miles per hour by taking his foot from the accelerator and using his foot brake, at the same time turning the truck toward the south curb; that he then traveled a distance of about fifteen feet at the rate of eight miles per hour, and then reduced the speed to about five or six miles for

a distance of about seven or eight feet, and then ran up against the south curb until he was a distance of about five feet from the plaintiff; that at that point the plaintiff's rear wheels were from four to five feet from the south curb, and that the plaintiff then apparently slightly reduced his speed, and that the driver of the truck then realized that a collision was imminent, and that he applied his emergency brake, but was unable to stop his car prior to the collision.

Plaintiff's testimony was corroborated by the witness Mayer; and a number of witnesses who arrived upon the scene immediately after the accident, and who traced the course of the defendant's truck along the highway by the marks left thereon, corroborated the defendant as to the course the truck took a distance of about thirty or thirty-five feet from the scene of the accident. As the result of the collision the plaintiff was thrown violently, with his body against the left side of the seat, causing him to sustain four fractures of his ribs in close proximity to the spine.

The case was submitted to the jury upon a special verdict, and the following were the questions and answers thereof:

"(1) Did the driver of the defendant's motor truck, at and prior to the time of the collision, fail to exercise ordinary care in the following respects:

"(a) In failing to slacken his speed in time to avoid the collision? *A.* Yes.

"(b) In failing to drive to the right of the center of the street? *A.* Yes.

"(2) If you answer 'Yes' to either or both subdivisions of question 1, then was said failure of said driver to exercise ordinary care the proximate cause of the plaintiff's injury? *A.* Yes.

"(3) Did any want of ordinary care on the part of the plaintiff proximately contribute to his injury? *A.* No.

"(4) What sum will reasonably compensate the plaintiff? *A.* For injury to his automobile? $106.46. For injury to his person? $5,000."

Upon motions after verdict the court found that the answer of the jury to question 1 (b) is against the clear preponderance of the evidence; that the personal injury damages awarded by the jury are excessive; and the court then set aside and struck out the answer of the jury to question 1 (b) and ordered a new trial unless the plaintiff should elect within twenty days to remit, as of the date of the verdict, all damages for personal injury in excess of $2,000; and upon plaintiff's election to comply with the order of the court judgment was ordered in plaintiff's favor for the sum of $2,000 damages for personal injury and $106.46 for damages to the automobile, in all the sum of $2,106.46; from which judgment the defendant has prosecuted this appeal.

Further facts will be referred to in the opinion.

For the appellant the cause was submitted on the brief of *Bundy, Beach & Holland* of Eau Claire.

*Fred Arnold* of Eau Claire, for the respondent.

DOERFLER, J.   The Ash driveway was a private driveway, and as the respective drivers of the two vehicles involved approached the intersection, each was charged with the duty of exercising ordinary care in order to avoid a collision.   The exercise of ordinary care, under such circumstances, involved a number of considerations, such as the width of Main street, the distance the drivers were from the intersection when they approached it, the speed of the respective vehicles, the points where they operated their vehicles on the highways when they first observed each other, or when, with the exercise of ordinary care, they should have made such observation, and the control which each driver had of his automobile.   These various considerations must be weighed from the standpoint of practicability, and ordinarily constitute issues which form the proper subjects of solution by a jury.   The trial court was of the

opinion that the alleged negligence of both parties formed a jury issue, and therefore submitted such issue accordingly to the jury by the questions of the special verdict, all of which questions were answered favorably to the plaintiff. However, upon the usual motions made by the parties after verdict, the court arrived at the conclusion that the answer of the jury to subdivision (b) of question number 1 was contrary to the clear preponderance of the evidence, and he therefore set it aside and struck it out. After a careful review of the evidence we are of the opinion that the order of the court in that respect was fully warranted and justifiable, because the physical facts which developed upon the trial clearly support the conclusion which the trial court arrived at, that the collision did not occur on the north side of Main street, but on the south side thereof.

There being but two versions presented by the evidence, namely, that of the plaintiff and his witness that the collision took place north of the center of Main street, and that of the defendant and his witnesses that it occurred south of such center, in view of the order of the court but one alternative remains as to the point of collision, and that is the one testified to by defendant's witnesses. So that we must assume that when the defendant's truck arrived at a distance of about thirty-six feet from the intersection it was traveling a little south of the center of Main street; that he then turned to the south a distance of about fifteen feet, towards the south curb; that he then proceeded along the curb until he arrived at the intersection, where the collision took place; and that the physical contact of the two machines occurred at a time when the rear wheels of plaintiff's automobile were about four or five feet from the south curb. In view of the width of defendant's truck it becomes apparent that the same did not have sufficient clearing to continue on its course without coming in contact with plaintiff's machine. The trial court evidently was of the opinion that the physical situation as disclosed by the evidence was controlling, and that the same fully accounted for the left

front wheel of the truck coming in contact and interlocking with plaintiff's automobile at a point thereon between the running board and the left rear wheel. The point where plaintiff's machine was struck by the truck is established by the undisputed evidence.

The main difficulty presented arises from the questions formulated and submitted in the special verdict. Under question 1 (a) the jury found the defendant negligent in failing to slacken the speed of his truck to avoid the collision; and as to question 1 (b) the defendant was also found guilty of negligence in failing to drive to the right of the center of the street. When the jury in its answer to question 2 found that the defendant was negligent with respect both to questions 1 (a) and 1 (b), and after the court had stricken out the answer to question 1 (b), it became physically impossible, by reason of the form of the second question and the answer thereto, to ascertain whether the finding of proximate cause depended on the answer to question 1 (a) or to question 1 (b). This difficulty could readily have been averted if the question of proximate cause had been submitted separately as to each of the subdivisions of question 1. Defendant's counsel, therefore, plausibly argue that after the order of the court striking out the answer to question 1 (b) the entire verdict was vitiated, and that the matter of proximate cause was then left entirely to speculation and conjecture, and that therefore the court should have ordered a new trial. The answer stricken out pertained, however, solely to the course the defendant's truck took, and did not affect in any way its speed or the control which the driver of the truck had as it proceeded along the course of the highway up to the point of collision. Defendant's driver testified that from the time that he first saw plaintiff's machine he could have easily stopped his truck three times. From the point of collision until the two machines were stopped the truck traveled a distance of about twelve feet, notwithstanding the application by the truck driver of his emergency brake. This fact may be

taken into consideration in determining both the speed of the truck and the control which its driver had and exercised. Assuming that the truck driver's testimony is true that he could have stopped the machine three times in the short distance that he traveled, and that plaintiff's machine was shoved a distance of twelve feet after the emergency brake on the truck had been applied, the irresistible conclusion is fastened on our minds that no effort was made to decrease the speed of the truck and to avoid the collision until immediately before the physical contact of the two machines. This clearly fastens negligence onto the defendant as a matter of law, and likewise establishes the proximate cause, and no jury would be warranted in finding otherwise.

But defendant's counsel ingeniously and plausibly argue that, assuming that the driver of the truck was guilty of negligence in failing to slacken his speed in time to avoid the collision, nevertheless the plaintiff was guilty of negligence as a matter of law which proximately contributed to his injury. Under the undisputed evidence in the case the plaintiff arrived at the intersection first, and if we believe his testimony the truck was then one hundred feet distant. If we believe the testimony of the defendant it was thirty-six feet distant. Main street at the point of the intersection was but twenty-six feet in width. In order to comply with his legal duty plaintiff was obliged to cross the center of Main street and then make his turn to the west. This afforded him but thirteen feet, namely, the north half of Main street, on which to make the turn. His car was in low when he started out from the rear of the Ash residence, and he proceeded along the private driveway with sufficient gas to enable him to travel at the rate of five miles per hour, and he continued at this rate until the defendant's truck came in contact with him. He made the usual, necessary observations as he crossed the sidewalk, both towards the east and towards the west. As he started to cross the sidewalk he observed the truck, and estimated that he had ample time within which to safely make the crossing and turn his

machine towards the west. According to his· testimony he
neither accelerated nor decreased his speed. In crossing
the walk he held out his left hand, and continued so to do
up to the time of the collision, operating the steering wheel
with his right hand. The driver of the truck, according
to his own testimony, had thirty-six feet within which to
regulate and control the speed of his truck. In determining
whether plaintiff was guilty of negligence which proximately
contributed to his injury, all of the foregoing facts stated
must be taken into consideration. Assuming even that the
truck driver's testimony is true that as the plaintiff with
his machine was crossing onto Main street he decreased
slightly the speed of his machine, it nevertheless was the
legal duty of the defendant's driver to so operate his ma-
chine under the circumstances as to avoid a collision.

Defendant's counsel strenuously argue that under the cir-
cumstances it was the duty of the plaintiff to increase his
speed, and that by doing so he would have passed a sufficient
distance to the north to enable the truck to pass him in
the rear and thus avoid the collision. The difficulty which
confronted the plaintiff was real. The street was narrow,
and he had but thirteen feet within which to turn. His
automobile covered that entire length. That it was neces-
sary for him to, and that he actually did, from the undis-
puted testimony, exercise due ordinary care under these
circumstances, is beyond controversy. While it is true that
the jury evidently passed upon the question of plaintiff's
contributory negligence under the assumption that the col-
lision took place on the north half of Main street, yet, adopt-
ing defendant's version, we cannot say that the plaintiff
did not exercise fully every degree of care with which the
law burdened him in the operation of his machine.

The answer, therefore, of the jury with respect to plaint-
iff's contributory negligence was fully warranted, and with
the view herein expressed we hold that he was free from
contributory negligence as a matter of law. No other ver-
dict on that subject could be sustained, and we are satisfied

that no jury would otherwise find. In the language of the opinion in the case of *Stevens v. Montfort State Bank,* 183 Wis. 621, 198 N. W. 600, it can hardly be said that the evidence "presented an ultimate issue to be determined by the jury; but whether or not we conclude that an issue was presented in the case, we cannot escape the inevitable conclusion that no jury would be justified in coming to a different conclusion. . . .' "

With the view thus expressed in this opinion, it becomes unnecessary to consider or treat the other errors assigned by the learned counsel for the defendant.

*By the Court.*—The judgment of the circuit court is affirmed.