McGill, Respondent, vs. Baumgart and others, Appellants:
Home Mutual Casualty Company, Impleaded De-
fendant and Respondent.

*November 7—December 5, 1939.*

For the appellants there was a brief by *Benton, Bosser, Becker & Parnell* of Appleton, and oral argument by *A. W. Parnell.*

For the respondent Francis McGill there was a brief by *Sigman & Sigman* of Appleton, and oral argument by *Sam Sigman.*

For the impleaded respondent Home Mutual Casualty Company there was a brief by *Edward J. Byrne,* attorney, and *Robert L. Spanagel* of counsel, both of Appleton, and oral argument by *Mr. Byrne.*

FRITZ, J. The automobile collision in question occurred on April 22, 1938, at 1 o'clock a. m. in the intersection of old Highway No. 41 and Sidney street, leading southward to the village of Kimberly. On Highway No. 41 there was an eighteen-feet-wide level concrete roadway with five-feet-wide graveled shoulders, extending to the east and west of the intersection. On Sidney street there was a decline going southward from the intersection. The collision occurred when the rear right fender of McGill's automobile, which

he had driven westward on the north half of the concrete roadway of No. 41, and had turned southward in the intersection so that but the rear wheels were still on the concrete roadway of No. 41, was struck by the right front end of the automobile which Wilfred Baumgart was driving eastward on the south half of the concrete roadway of No. 41. In a special verdict the jury found (1) that the collision was caused by negligence of Baumgart in respect to (a) speed, (b) lookout, and (c) control and management; (2) that McGill was not negligent in respect to (a) lookout, (b) control and management, (c) right of way, or (d) turning left across the path of an oncoming car under the circumstances then and there present; and (3) that one hundred per cent of the total causal negligence was attributable to Baumgart.

On this appeal the appellants Wilfred and Fred Baumgart and their insurance carrier contend that there is no credible evidence to sustain the jury's findings of negligence in respect to speed, lookout, and control and management on the part of Wilfred Baumgart; that, on the other hand, McGill was guilty of contributory negligence as a matter of law in respect to (a) control and management, (b) yielding the right of way, and (c) turning left across the pathway of Baumgart's oncoming car; and that McGill clearly failed to comply (1) with sec. 85.18 (1), Stats., by failing to give a plainly visible signal of his intention to turn left across the line of travel of Baumgart's automobile, and (2) with sec. 85.18 (5), Stats., by failing, before making his turn to the left, to afford Baumgart a reasonable opportunity to avoid a collision.

A review of the record discloses that there was evidence which, when construed most favorably to plaintiff's contentions, as must be done on this appeal in determining whether it sustains the jury's findings, admits of considering the following facts established. The visibility and opportunities for observation by the drivers were such that each could, with the exercise of ordinary care, have seen the

other's car as it was approaching for a considerable distance before reaching the intersection. McGill approached at a rate of thirty miles per hour and gradually slowed down to almost a stop, before turning left at the center line of Sidney street in the intersection. When he was about four telephone poles (400 to 500 feet) from the intersection, he saw the lights of Baumgart's oncoming car and judged it to be eight telephone poles (800 to 1,000 feet) west of the intersection. Each car was approaching on its proper side of the road. As McGill approached the intersection he stuck the fingers and half of the palm of his left hand out of the top of the window to signal his intention to turn left. While doing so he kept looking at the approaching car which, as he made his left turn, he judged to be at least two telephone poles (over 175 feet) west of the intersection; but he formed no opinion as to its speed. The guest in his car, Dorothy Van Vreede, estimated that when McGill undertook to make the turn, Baumgart's car was one and one-half or two city blocks away. She, as well as McGill, watched the oncoming car as they were making the left turn, and only looked to the south after McGill's car lights were pointed south and most of his car was already off the concrete. Only its right rear wheel was still on the concrete when it was struck by the right front end of the defendant's car. That pushed McGill's car to the east and spun it around two and one-half times, causing Dorothy Van Vreede to be thrown from the car into a ditch on the east side of Sidney street, and the plaintiff to be swung around in his car, and twisted to the right with one leg dragging on the ground. In the meantime, Baumgart's car, after having skidded eastward on the concrete roadway from about one hundred feet west of the point of collision, continued skidding until it came to a stop one hundred ten feet to the east thereof. His approach had continued at forty-five to sixty miles per hour without slacking, until, upon seeing that McGill's car was turning to the south, he applied his brakes

with full force when about one hundred feet west of the intersection. The facts that Baumgart's car not only had not been brought to a stop in time to avoid the collision, but had continued to skid for one hundred ten feet beyond the point of impact, and that the force and momentum of his car, after the brakes had been applied for one hundred feet, were still so great at the time of the collision as to push McGill's car eastward and spin it around two and one-half times, could rightly be considered by the jury to warrant its finding that Baumgart was guilty of causal negligence in respect to speed and control and management. A test as to the care exercised in controlling and managing an automobile is the operator's success or failure to stop as required in the exercise of due care and when that result has not been accomplished as required thereby, a gross failure in that respect may admit of the inference that there was negligence on his part in respect to speed or control and management. *White v. Kane,* 179 Wis. 478, 484, 192 N. W. 57; *Ortmann v. A. Leath & Co.* 187 Wis. 616, 623, 205 N. W. 397; *Rubach v. Prahl,* 190 Wis. 421, 423, 209 N. W. 670; *Kealty v. Sponholz,* 200 Wis. 80, 82, 227 N. W. 247; *Madden v. Peart,* 201 Wis. 259, 261, 229 N. W. 57; *Krantz v. Krantz,* 211 Wis. 249, 252, 248 N. W. 155. Likewise, in finding Baumgart negligent in those respects, the jury could consider significant the fact that he failed to avoid the collision although, as there were no other vehicles in the vicinity and all but the rear wheels of McGill's car had cleared the eighteen-feet-wide concrete roadway, almost the entire width thereof was available to Baumgart to pass safely to the rear of McGill's car.

In relation to Baumgart's alleged negligence in respect to lookout, the evidence admitted inferring that, although he had seen, when he was seven telephone poles (700 to 800 feet) to the west of the intersection, the approaching McGill automobile, and although McGill was engaged in making his left turn when Baumgart was one hundred seventy-five to

three hundred feet to the west thereof, he had failed to observe the movements of McGill's car after first seeing it, until he was suddenly confronted with the realization that it was making the left turn. Under the evidence the jury could infer that had Baumgart continued to keep proper lookout, he would have noticed when he was still three hundred feet from the intersection that McGill was turning to the left, and under those circumstances the jury was warranted in finding causal negligence on the part of Baumgart in respect to lookout. It follows that if the issues as to negligence on the part of Baumgart, and likewise the questions in answer to which the jury found there was no negligence on the part of McGill had been properly submitted to the jury, he would have been entitled to judgment on the verdict.

Appellants contend that the court erred in several respects in the submittal of the issues. The court instructed the jury that "Highway '41' at the place in question was a residence district and that the speed limitation is fixed by subsection (7), of section 85.40, and reads as follows: 'The maximum permissible speed on any highway in a residence district shall be twenty miles per hour; but local authorities may increase the speed as provided in section 85.43.'" If Highway No. 41 at the place in question was not a residence district, the maximum permissible speed was not merely twenty miles per hour, and in that event the instruction was inapplicable and constituted prejudicial error. Appellants claim that in view of the evidence in relation to the dwellings and buildings fronting on Highway No. 41, the court erred in stating that the place in question was a "residence district." The term "residence district," as used in sec. 85.40 (7), Stats., is defined in sec. 85.10 (29), Stats., as "the territory contiguous to a highway not comprising a business district where the frontage on such highway for a distance of three hundred feet or more is mainly occupied by dwellings or by dwellings and buildings in use for business." Under that definition and the proof herein the place in question clearly was not a residence dis-

trict. In the first three hundred thirty-five feet of frontage on the south side of Highway No. 41 immediately to the west of Sidney street there were but two houses with a total frontage of sixty-four feet, and within that amount of frontage on the north side of the highway a store, residence, and garage occupied sixty-three feet of the frontage. Even upon adding the sixty-four feet of building frontage on the south side to the sixty-three feet of building frontage on the north side of the highway, there is but a total building frontage of one hundred twenty-seven feet on both sides of the road, which amounts to less than forty per cent of the total frontage of three hundred thirty-five feet on either side. Likewise there is no increase in the percentage of the occupied frontage if, instead of applying the test to frontage commencing at Sidney street, the frontage which is unoccupied on each side of the first house west of Sidney street is omitted and there are included the frontages occupied by the second, third, fourth, and fifth houses, and the unoccupied frontage between them on the south side of the highway for the distance of about three hundred feet. The conditions are such that they do not admit of holding that the frontage in any distance of three hundred feet or more, along the place in question, is "mainly" occupied by "dwellings and buildings," so as to constitute a "residence district" as defined in sec. 85.10 (29), Stats. As commonly defined, the word "mainly" means "principally," "chiefly," "in the main." That meaning requires occupancy of at least over fifty per cent of the frontage by dwellings and business buildings. If as little as fifty per cent had been intended to be sufficient to render a district residential, then instead of using the word "mainly" in sec. 85.10 (29), Stats., some such term as "fifty per cent or more" should have been used, as was done in defining a "business district" in sec. 85.10 (28), Stats., which reads: "The territory contiguous to a highway when fifty per cent or more of the frontage thereon for a distance of three hundred feet or more is occupied by buildings in use for busi-

ness." But under sec. 85.10 (29), Stats., as presently worded, the obvious intent is to require more than but fifty per cent of frontage to be occupied by dwellings and buildings in order to render a district residential. The erroneous instruction that the place in question was a residence district, and that the maximum speed permissible was but twenty miles per hour, was prejudicial to Baumgart in several respects. As he had admitted that he was traveling at forty miles per hour, the jury was virtually required as the result of the erroneous instruction to find that he had been guilty of a violation of a statute which constituted negligence as a matter of law.

In addition, the instruction was also prejudicial to Baumgart because of its bearing upon the questions in the special verdict as to whether McGill was negligent in respect to his "control and management," and his "turning left across the path of the oncoming car." In passing upon those issues the jury was required to take into consideration not only the speed at which Baumgart approached and what McGill observed or ought to have observed, but also what he could rightly assume in respect to Baumgart's speed. And the bearing and significance of those matters upon the issues as to McGill's negligence were rightly brought to the attention of the jury by the court's instructions that the operator of a vehicle intending to make a left turn within an intersection across the path of a vehicle approaching from the opposite direction "may make such left turn where it is permitted only after affording a reasonable opportunity to the operator of such vehicle to avoid a collision;" and that the operator of an automobile traveling upon the highway can assume that other drivers will operate their automobiles in a lawful manner. It follows that the giving of the instructions in question constituted reversible error.

Appellants also contend that in merely sticking the fingers of his left hand and up to the middle of the palm out of an opening at the top of the window of his car McGill failed to comply with sec. 85.18 (1), Stats., which provides: "The

driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first-mentioned vehicle; provided, the driver of the vehicle turning left has given a plainly visible signal of intention to turn as aforesaid." The term "plainly visible" in that statute must be considered of some significance and given due effect. In view of the extent to which the visibility of but three fingers and half of a palm sticking out at the top of a left-side window of an automobile is apt to be impaired at night in connection with the motion and left turn of the car and the fact that they are stuck out to the rear of the headlights where such objects are quite inconspicuous under such conditions, an attempted signal in but that manner cannot be deemed to constitute the "plainly visible signal" required by the statute. On the subject Baumgart testified, "I noticed no signal that the other driver gave me. I was in such a position and maintained such a lookout that I could have seen it had he given one." Likewise Bernhard van Berkel, a guest who sat alongside Baumgart testified that he observed no signal given by the other driver of his intention to turn left. On the other hand, there is no evidence that, under the existing facts and circumstances, the sticking out of three fingers and palm constituted such a "plainly visible signal" of McGill's intention to turn left so as to warrant the conclusion that in that respect there was compliance by McGill with sec. 85.18 (1), Stats. Consequently, the requirements under that section in respect to yielding the right of way were not applicable to Baumgart and the jury should have been so instructed, instead of being directed to consider the provisions of sub. (1) of sec. 85.18, Stats., in connection with the issue as to whether McGill was negligent in respect to right of way.

Appellants' contention that there was prejudicial error by reason of the failure of the court to submit in the special verdict a requested question as to whether McGill was negligent

in respect to giving Baumgart a reasonable opportunity to avoid a collision cannot be sustained. Although the question as requested was proper, the failure to submit it did not constitute prejudicial error in view of the fact that the issues raised by the question, and the subject matter thereof, were sufficiently brought to the jury's attention and submitted for its consideration by the court's instruction as to the provisions of sub. (5) of sec. 85.18, Stats. Likewise there was no error in failing to give the instructions which the appellants requested on the subjects of a sudden emergency, and as to what an operator of an automobile may assume in respect to others operating their automobiles in a lawful manner. Those subjects were sufficiently covered by instructions which the court gave. However, for reasons stated above, the judgment must be reversed and the cause remanded for a new trial.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.