**BOWLING GREEN–HOPKINSVILLE
BUS CO., Inc. et al. v. ADAMS
(three cases).**

Court of Appeals of Kentucky.

March 13, 1953.

Rehearing Withdrawn Oct. 26, 1953.

Stoll, Keenon & Park, Lexington, Coleman, Harlin & Orendorf and W. O. Bilyeu, Bowling Green, for appellants.

James C. Lyne and J. Granville Clark, Russellville, for appellees.

DUNCAN, Justice.

These three appeals involve actions for personal injuries arising out of an automobile accident which occurred October 15, 1950, on U. S. Highway 68 in Logan County, Kentucky. The three appellees were passengers in an automobile driven by one Leslie Riggins, which collided with a bus owned by the appellant, Bowling Green-Hopkinsville Bus Company, and driven by the appellant, Mota E. Young. In the separate actions, Riggins was joined as a defendant, but there was no verdict or judgment against him, and he is not a party to the appeal. The actions were consolidated for trial, and based upon the verdict of the jury, separate judgments were rendered against the bus company and its driver in favor of the appellees for the following amounts:

| | |
|---|---|
| Mrs. Raymond Adams | $5,568.34 |
| Eleanor Adams | 10,967.25 |
| Caroline Adams | 2,605.50 |

The testimony is conflicting, and it is conceded that the evidence creates an issue of fact for the jury. Testimony for the appellees was to the effect that they were on their way to attend a revival at the Union Baptist Church in what is known as the Whipporwill community. They drove onto U. S. 68 from the Ferguson Road, turned right in an easterly direction, and proceeded down the road toward the church. When they reached the west driveway to the church, Riggins made a signal of his intention to turn left into the driveway. About that time, the driver of the bus, which was behind the car and traveling in the same direction, flicked his lights as a signal of his intention to pass. Riggins, seeing that the bus was about to pass, remained on his right side of the road, and the rear of his car was struck by the bus. The testimony fixes the speed of the bus at from forty-five to fifty miles per hour.

The witnesses for the appellants testified that the bus driver blew his horn and flicked his lights as a signal of his intention to pass and pulled to the left side of the road for that purpose; that Riggins then pulled to the left to turn into the driveway. The bus driver, in an effort to avoid striking the car, turned his vehicle to the right side of the road and Riggins became confused and turned his car back to the right of the road directly in the path of the bus.

As grounds for reversal, appellants insist that the lower court erred in: (1) failing to sustain their motion for a judgment on the verdict; (2) the admission of incompetent evidence; and (3) giving an instruction which should not have been given. It is also contended that the verdict in favor of Eleanor Adams is excessive, but we will not discuss that ground since the judgments are being reversed for other reasons.

Appellants' motion for a judgment on the verdict is based on the contention that the verdict of the jury failed to make a specific finding against the bus driver, and under authority of Illinois Central R. R. Co. v. Applegate's Adm'x, 268 Ky. 458, 105 S.W.2d 153, it is insisted that this fact precludes a judgment against the master or principal. Originally, it was the rule in Kentucky, as expressed in Illinois Central R. R. Co. v. Murphy Adm'r, 123 Ky. 787, 97 S.W. 729, 11 L.R.A.,N.S., 352, that a verdict in favor of the servant did not preclude a judgment against the master. The theory supporting the rule was that the master and servant were joint tortfeasors. The theory, of course, was erroneous, and it was recognized in Illinois Central R. R. Co. v. Applegate's Adm'x, supra, that the master's liability rests upon the doctrine of respondeat superior, and unless negligence on the part of the servant is shown, a recovery against the master cannot be sustained. The Applegate case was followed in Louisville & Nashville R. R. Co. v. Farney, 295 Ky. 8, 172 S.W.2d 656, which specifically overruled the Murphy case. In the Farney case, the plaintiff sued the railroad company and several of its employees, and the jury returned a verdict against the company alone. The Court there held that the fail-

ure of the jury to make a specific finding against the employees was equivalent to an affirmative verdict in their favor, and that under the circumstances it was error to enter a judgment on the verdict against the master. The Farney case was followed and a similar construction was given to the verdict in Dillion v. Harkleroad, 295 Ky. 308, 174 S.W.2d .419.

■■ The rationale of the Farney and Harkleroad cases was that a failure to make a finding against the servants evidenced an intention on the part of the jury to find in their favor under the facts presented in those cases. These opinions do not establish the invariable rule that in every case and under all circumstances the failure to specifically find against the servant will be regarded as an affirmative finding in his favor. The problem is merely one of determining the intention of the jury as indicated by the verdict. In interpreting the verdict, it is entirely proper to consider the instructions under which the verdict was rendered. A consideration of the instructions given here makes it abundantly clear that the jury did not intend a verdict in favor of the bus driver. On the contrary, we think the verdict, fairly interpreted, amounted to a finding against the driver.

■ The court, by Instruction 8, informed the jury that it might find a verdict for each of the plaintiffs against all of the defendants or against any one or more of the defendants, or that it might find against one defendant and in favor of another, or if the finding was against more than one defendant, it might fix damages in different sums against each defendant. The concluding paragraph of this instruction was as follows:

"And for the purpose of this instruction, Mota E. Young and the Bowling Green-Hopkinsville Bus Company, Inc., are to be considered as one defendant."

We must assume that the jury followed the instructions of the court, and the verdicts considered in the light of the quoted instruction clearly indicate that a finding against both the bus company and its driver was intended.

■ The incompetent evidence of which appellants complain is the testimony of various witnesses that a revival had been in progress for about a week at the Union Baptist Church. We assume this evidence was introduced and permitted to go to the jury on the theory that the bus company and its driver should have known that there would be a number of cars around the church and thereby a greater care or duty was incumbent upon them. So far as the driver is concerned, it is shown that at the time of the accident he was not on his usual run but was merely relieving the regular driver.

There is no evidence that this accident happened at a time when the road was crowded with traffic. There is no evidence that crowds of people were frequently or regularly around the church, nor is there any evidence that the bus company knew how long the revival was going to last. Testimony as to the revival meetings on previous nights related to only a temporary condition, and it is not susceptible of the inference that an unusual degree of care was required in approaching or passing the church. It was certainly competent to show conditions on the highway on the night of the accident, but we can see no reason which would justify showing conditions on the preceding evenings unless the preceding conditions were of a permanent nature. We think the evidence was incompetent although we do not regard it as prejudicial. If the admission of this evidence was the only error appearing in the record, we would not consider it sufficient to justify a reversal.

■ Finally, we consider the instruction of which appellants complain. By Instruction 3, the jury were told that if they believed from the evidence that the highway at the point of the accident was a residential district a speed in excess of thirty-five miles per hour was unlawful. The instruction then defined "residential dis-

**17**

trict" as that term is defined by KRS 189.390(8) (b).

The Legislature, at its 1950 session, enacted a completely new speed law in Kentucky, and this is the first time this Court has been called upon to construe the term "residential district" as defined in the 1950 Act. Such a district is there defined as follows:

"Residential district—The territory contiguous to and including a highway not comprising a business district when the property on such highway for a distance of 300 feet or more is in the main improved with residences or residences and buildings in use for business."

There is no controversy concerning the number of residences and other buildings in the vicinity where the accident occurred. The question of whether the area involved was or was not a residential district was, therefore, a question of law for the court rather than one of fact for the jury. Of course, if this particular portion of the road was a residential district, the submission of the question to the jury would not be prejudicial. We are, therefore, required to construe the statute to determine whether or not the place where the accident occurred was a residential district. Starting at the point where the Gordonsville Road intersects Highway 68 and proceeding easterly it is 1,035 feet to the east boundary of the Union Baptist Church property. Within that distance, there is a vacant store, a shop, and a church on the north side of the road, and a residence and a store on the south side. Continuing eastward for a distance of some 2,000 feet, there are two residences on the north side of the road and a residence and a tenant house on the south. Confining the distance to within 300 feet of the point where the accident occurred, the only building east of the church entrance is a shop with a width of thirty-six feet on the north side of the road and a residence located to the rear of the shop.

There is a dearth of judicial authority construing the term "residential" or "residence" districts as used in statutes similar to ours. The only direct authority which is cited or found are two Wisconsin cases construing a statute of that State which is similar to the 1950 Kentucky Act. The Wisconsin Court held that the question of whether or not a given territory constitutes a residence district should be determined by computing the frontage of the houses and if the frontage of the houses was less than fifty per cent of the total frontage of the highway, the property was not, in the main, occupied by buildings. We quote as follows from the opinion in McGill v. Baumgart, 233 Wis. 86, 288 N. W. 799, 802:

"The conditions are such that they do not admit of holding that the frontage in any distance of 300 feet or more, along the place in question, is 'mainly' occupied by 'dwellings and buildings', so as to constitute a 'residence district' as defined in sec. 85.10(29), Stats. As commonly defined, the word 'mainly' means 'principally', 'chiefly', 'in the main'. That meaning requires occupancy of at least over fifty per cent. of the frontage by dwellings and business buildings."

This case was followed by the same court in Volland v. McGee, 238 Wis. 598, 300 N.W. 506, in which the rule was stated to be that a mathematical summation of the frontage, as referred to in the earlier opinion meant space in front of the buildings only without regard to the surrounding grounds and that the frontage of buildings as thus computed must amount to more than fifty per cent before the area would be considered as residential within the meaning of the statute.

The construction of the Wisconsin statute was based to some extent upon a comparison of the definition of "residence district" with a definition of "business district" as contained in a different subsection. The definition of "business dis-

trict" as contained in our statute, KRS 189.390(8) (a), differs materially from the Wisconsin definition of the same term. Since these cases are, to some extent at least, based upon a distinction which we are unable to draw under our own statute, we are unwilling to adopt the method of mathematical calculation which is suggested by the Wisconsin court.

We do not think it is necessary in a decision of the cases presently before us to adopt a hard and fast rule for determining when a particular area is a residential district as defined in the statute. Without formulating or applying any definite rule, we have no difficulty in concluding that the portion of the road where this accident occurred was not a residential district within the meaning of the statute. On practically every road in Kentucky, there will be found frequent collections of some two, three, or four houses in as close proximity as the houses near where this accident occurred. We do not think the Legislature intended that such areas should be considered residential districts as that term is used in the 1950 speed law.

Appellees argue that the instruction, even if erroneous, was not prejudicial since the question of speed was not involved in determining which driver was at fault. The complete answer to this contention is that if the speed of the bus was not involved that issue should not have been submitted to the jury in any form. We think speed was an issue. The speed of the bus necessarily affected the driver's control and ability to avoid collision with other vehicles. If he was exceeding a lawful rate of speed, that fact may have set in motion the chain of events which culminated in the accident. We think the giving of Instruction 3 was a prejudicial error which requires a reversal.

The judgments are reversed.