OLLIE F. MINTON, JR. v. J. LEO GOBBLE et al.
J. LEO GOBBLE v. OLLIE F. MINTON, JR.
WILLIAM MARCUS BYRD v. OLLIE F. MINTON, JR.
—304 S. W. (2d) 337.

Middle Section.   March 29, 1957.

Petition for Certiorari denied by Supreme Court July 29, 1957.

Waller, Davis & Lansden and Maclin P. Davis, Jr., Nashville, for Ollie F. Minton, Jr.

Farris, Evans & Evans and Charles Warfield, Nashville, for J. Leo Gobble.

Manier, Crouch & White, Nashville, for William Marcus Byrd.

478

FELTS, J.   These three cases grew out of a collision of automobiles at the intersection of Franklin Highway and Robertson Academy Road.   Ollie F. Minton, Jr., was driving one of the cars north on his right (the east) side of Franklin Highway.   The other car, owned by J. Leo Gobble and being driven by his employee, William Marcus Byrd, was coming south on its right (the west) side of the highway.   Turning to his left across the west side of the highway to enter Robertson Academy Road, Minton drove his car in front of the Byrd car and they collided.

Minton sued Gobble and Byrd for his personal injuries. Byrd sued Minton for his personal injuries; and Gobble sued Minton for damages to his car.   The three cases were tried together, and in Minton's suit there was a verdict and judgment for defendants; in Byrd's suit against Minton there was a verdict for Byrd for $9,000, and in Gobble's suit there was a verdict and judgment for Gobble for $2,400.

The Trial Judge approved each of the verdicts and entered judgments thereon, except that in Byrd's case he suggested a remittitur of $1,500 which Byrd accepted under protest, and judgment was entered for him for $7,500.   Minton acquiesced in the verdict and judgment against him in his suit, but appealed in error from the judgments in the two suits against him.   Byrd also appealed from the remittitur.

Minton has assigned errors through which he insists that in the suits against him verdicts should have been directed for him because there was no evidence of any negligence on his part and because the undisputed evidence showed that Byrd, driver of the other car, was

guilty of contributory negligence, as a matter of law, in two particulars: (1) he was driving 55 miles per hour in violation of a "residential district" speed limit of 30 miles per hour and (2) in violation of a school zone speed limit of 15 miles per hour.

In considering whether verdicts should have been directed for defendant Minton, we must look to all the evidence, take the strongest legitimate view of it to uphold the verdicts for plaintiffs, take the evidence for plaintiffs as true, discard all countervailing evidence, and allow all reasonable inferences to sustain the verdicts. Smith v. Sloan, 189 Tenn. 368, 225 S. W. (2d) 539, 227 S. W. (2d) 2.

The Franklin Highway (U. S. 31, Tenn. 6) runs roughly north and south and is a main heavily traveled thoroughfare from Nashville to Franklin and points south. It is a broad four-lane highway, with a line painted in the center and lines for two lanes for northbound traffic and two lanes for southbound traffic. The Robertson Academy Road intersects the west side of Franklin Highway but does not cross it. This side road leads west to Robertson Academy, a county public school, located some 1,500 feet off and west of Franklin Highway.

The accident happened at 2:00 p.m. October 15, 1954. Minton was on his way to the Robertson Academy to pick up his children, driving north on his right (the east) side of the Franklin Highway, intending to turn to his left across the south-bound traffic lanes into Robertson Academy Road. Byrd was driving south in the outside or west lane for southbound traffic. As Byrd approached, Minton stopped as if to let Byrd pass, then suddenly drove in front of Byrd's car, the right front of Minton's car striking the left front of the Byrd car.

Byrd testified that he was driving south at the rate of about 60 miles per hour, approaching Robertson Academy Road; that he saw the Minton car coming north on the east side of the highway in the inner traffic lane, its blinker lights signaling a left turn; that he put his foot on the brake, checked his speed to 55 miles per hour, and when he was about 300 feet from the Minton car, that car *"stopped"* at the center line as if to let him pass (italics ours); that he came on and when he was within "about 50 feet" of the Minton car, it suddenly, without any warning, pulled across in front of him, he blew his horn, swerved to the west shoulder, and the front of the Minton car struck the left front of his car.

This was substaintially the same version as that given by Mrs. Campbell, who was riding on the front seat with Byrd. She said as they came south on the highway they saw the Minton car indicating it was going to turn across the southbound traffic lanes in the Robertson Academy Road; that Byrd "slowed down some", and then when his car was only "two or three car lengths" from the Minton car, it "just suddenly darted out in front of us", and the Minton car struck the Byrd car when the cars were on the left shoulder of the road.

Minton did not deny this version. He said that as he was coming north on the east side of the highway, he saw the Byrd car coming south about 600 feet away; that he turned on his blinker light signaling a left turn and stuck out his hand signaling a stop; and that he stopped in his left or the inner northbound traffic lane. Then he said: "And then I forgot everything. I don't know whether I got a concussion or not. I don't remember any-

thing else. Now *maybe I pulled head-on into the car,* I don't know * * *'' (italics ours).

Upon this evidence we think the jury could well find that Minton, signaling a left turn with his light and a stop with his hand, saw the Byrd car approaching and when it was about 300 feet away, Minton stopped at the center line indicating he meant for Byrd to pass; that when Byrd acted on this indication and was very close to the Minton car, it suddenly, without any warning, cut across and stuck the front of Byrd's car; and that Minton was thus guilty of negligence which proximately caused the injuries and damages sued for.

It is argued for defendant Minton, however, that when Byrd approached, and saw Minton signaling a left turn, Minton acquired the right-of-way, and it became the duty of Byrd to yield the right of way to Minton, under 1950 Code Supp. sec. 2700.8(b).

Even if Minton had the right-of-way under this statute, it would seem that he waived such right when he stopped and lead Byrd to believe he meant for Byrd to pass. The statutes regulating the right-of-way do not cover the whole duty of motorists. In addition to the requirements of the statutes, the motorist has a common law duty to use ordinary care to avoid endangering or injuring another upon the highway, and the jury could well find that Minton breached this duty and was guilty of negligence. Maxwell v. Kirkpatrick, 22 Tenn. App. 21, 28, 116 S. W. (2d) 340; Southern Coach Lines v. Haddock, 29 Tenn. App. 132, 136, 194 S. W. (2d) 347.

We also think that it could not be ruled that Byrd was guilty of contributory negligence, as a matter of

law, in driving at the rate of 55 miles per hour on the highway at the place of the accident. As stated, this accident happened in October 1954, at a time when there was no maximum speed law except a speed limit of 30 miles per hour in a "residential district" or a "business district", and except the speed of 15 miles per hour in a school zone, and except speed limits fixed by the Department of Safety in "congested areas" or dangerous points on the highway (1950 Code Supp. sec. 2700.2(b)).

The general rule then was that there was no statutory speed limit and the measure of a motorist's duty was to exercise ordinary care according to the circumstances in a particular case. Generally, the question of whether one exercised such care is a question for the jury.

■ We think there was no evidence to bring this case within the exceptional speed limit of 30 miles per hour in a residential or business district. The statute (1950 Code. sec. 2700.1(15, 16), defining "residential district" and a "business district" is as follows:

"15. 'Residential District.' The territory contiguous to and including a highway not comprising a business district when the property on such highway for a distance of three hundred (300) feet or more is in the main improved with residences or with residences and buildings in use for business.

"16. 'Business District.' The territory contiguous to and including a highway when fifty (50) per cent, or more of the frontage thereon for a distance of three hundred (300) feet or more is occupied by building in use for business."

Under statutes quite similar to ours, it is generally held that in order to constitute a residential or business district, the property on such highway for a distance of 300 feet or more must consist of residences or business houses, and that the frontage of buildings "must amount to more than 50 per cent of the total frontage of the area on the road". Bowling Green-Hopkinsville Bus Co. v. Adams, Ky., 261 S. W. (2d) 14; McGill v. Baumgart, 233 Wis. 86, 288 N. W. 799; Annotation, 50 A. L. R. (2d) 343, 351.

There was no evidence that there were residences or business houses along the highway at the scene of the accident with a frontage of more than 50 per cent of the total frontage on the highway; and, therefore, the Trial Judge properly instructed the jury that there was no evidence showing that this was a residential district with a speed limit of 30 miles per hour.

■ We also think that it could not be ruled that Byrd was guilty of contributory negligence, as a matter of law, for violating the school zone speed limit of 15 miles per hour.

As stated, Robertson Academy was located 1,500 feet off and west of the Franklin Highway. There was a school zone 15 miles per hour sign on the highway, which Byrd saw as he approached the Robertson Academy Road. He also said that he knew it was about time for school to let out. However, it appears without dispute that the accident happened before school let out and that no children were going to or leaving the school during its opening or closing hours.

Evidence for plaintiff was that it was a custom for the officers patroling that section of the highway to set up in this intersection a dummy policeman to indicate that this was a school zone during the opening and closing hours of the school while the children were going to or leaving the school. Byrd was familiar with this custom and had seen this dummy policeman there; and he said since he did not see the dummy or any children or anything to indicate that it was opening or closing time of the school, he proceeded on at what he regarded a safe speed.

Defendant relies on Webster v. Trice, 23 Tenn. App. 365, 133 S. W. (2d) 621, 626. That case is not in point. It was tried before the judge without a jury and he found as a fact that the accident occurred "while children were going to the Flat Rock School during its opening hours".

In the case before us the Trial Judge submitted to the jury the issue of whether the accident occurred at a time when children were going to or leaving the school during its opening or closing hours, and the verdict of the jury on this issue is supported by material evidence and cannot be disturbed by this Court.

This brings us to Byrd's insistence that the Court erred in suggesting a remittitur reducing the judgment from $9,000.00 to $7,500. It appears that Byrd suffered the loss of four upper teeth, a fracture of his jaw with a 25% restriction of his ability to open his mouth completely, and loss of a kneecap. His medical expenses were some $700 and he lost his wages of $40 per week for eight weeks.

Great weight will be given the action of the Trial Judge in suggesting a remittitur reducing the judgment to what he thinks is proper. City of Nashville v. **Brown,** 25 Tenn. App. 340, 350, 157 S. W. (2d) 612, 619; Ezell v. Post Sign Co., Inc., 30 Tenn. App. 256, 260, 205 S. W. (2d) 13; Smith v. Sloan, 189 Tenn. 368, 377, 225 S. W. (2d) 539, 227 S. W. (2d) 2.

We think the Trial Judge did not err in suggesting the remittitur. It results that all the assignments of error are overruled, the judgments of the Circuit Court are affirmed. The costs are adjudged against plaintiff-in-error Minton and the surety on his appeal bond.

Hickerson and Shriver, JJ., concur.