SHANNON, Judge.
This appeal is from a verdict and judgment in favor of the appellee, who was the plaintiff below. The case arose out of an accident occurring on the night of November 21, 1956, in which the husband of the appellee, while crossing highway 17 on foot just south of the town of Mulberry, was struck by an automobile operated by appellant.
The injured man did not die immediately, and the initial action was filed May 6, 1957 in his name. When he did eventually succumb to these injuries on June 13, 1957, this case was amended to be in the name of his wife as administratrix, and thereafter appellee filed an additional action as widow, that case being the subject of a separate appeal.
The accident in question happened about 10:30 o’clock at night, with a variable fog partially obscuring vision, at a point just outside of town, where a used car lot, a grocery store, and a few dwellings and : other miscellaneous buildings were located, ,the exact number and location of which were somewhat in dispute. The decedent had parked his truck on the western shoulder of the road, -and after waiting for two southbound cars to pass proceeded to cross 'the highway, almost reaching the opposite side when he was struck by the defend- ' ant’s car traveling north. According ' to the decedent’s - account of the mishap he started walking across the road and was most of the way over when he realized that car lights were coming up on him fast, fat which point he started to run the rest : of the way, but missing by a foot or less • escaping the oncoming car. The defendant’s testimony was to the effect that immediately after passing a car headed south he observed the decedent for the first time, at a distance of only a few feet scurrying <across the road in front of him, and he had no time either to swerve or apply his brakes before striking the man with, the right front portion of his car. It is not disputed that defendant was traveling between forty and forty-five miles per hour.
Of the four questions defendant raises on appeal we feel that two merit serious consideration, and these two relate to charges given the jury by the trial judge. The judge instructed the jury what the statutory definition of “residence district” was as found in section 317.01(19) Fla.Stat. 1955, F.S.A., and the applicable speed laws in residence districts and open highways, leaving it to them to determine if the locus of the accident comprised a residence district within the cited statute, and to apply the appropriate speed law; whereas, the defendant contends that this issue should have been determined by the judge as a matter of law. The second charge objected to by the defendant was one instructing the jury on the “last clear chance” doctrine.
An investigation of the law pertaining to appellant’s first contention reveals that there are few cases and little harmony on the subject. See 50 A.L.R.2d 343. This lack of harmony is due in large part to the wide divergence in statutory language used by the various states in defining residence, or residential district, but there are also conflicts between jurisdictions with similar or identical statutes. The pertinent portions of the Florida Statutes 1955, F.S.A., are:
“317.01 Definitions.— * * *
“(3) Business District. The territory contiguous to, and including, a highway when fifty per cent or more of the frontage thereon, for a distance of three hundred feet or more, is occupied by buildings in use for business.
******
“(19) Residence District. The territory contiguous to, and including, a highway not comprising a business district when the property on such highway, for a distance of three hundred' feet or more, is in the main im *77 proved with residence or residences and buildings in use for business.”
“317.22 Speed restrictions.— * *
“(2) Where no special hazard exists the following speeds shall be lawful but any speed in excess of said limits shall be prima facie evidence of reckless driving:
“(a) Twenty-five miles per hour in any business or residence district.
“(b) Sixty miles per hour in other locations during the daytime.
“(c) Fifty miles per hour in such other locations during the night time.”
Appellant first urges upon us two Florida cases, Bessett v. Hackett, Fla., 1953, 66 So.2d 694, 699, and Osborne v. Lee, Fla., 1952, 57 So.2d 652. However, these cases involved situations where all facts were admitted, and it was held that the scene of the accident was clearly not within the statutory definition urged. In the instant case the testimony was in some conflict as to the actual number of buildings in the area in question, and certain sketches of the area purporting to show the dwellings and businesses as they were on the night of the accident were objected to and the objection sustained.
Appellant also quotes at length from McGill v. Baumgart, 1939, 233 Wis. 86, 288 N.W. 799, a case construing a statutory definition of residence district which is quite similar to ours; however, the Wisconsin statute referred to frontage mainly occupied by dwellings or dwellings and buildings in use for business for a space of three hundred feet. The court considered this definition, comparing it to their statutory definition of “business district”, which is substantially identical to ours, and came up with the conclusion that “mainly” means “principally”, and hence requires a highway to have over fifty per cent frontage by dwellings to fall within the statutory definition, a test the area in our case would not meet under any view of the evidence. This case was followed by the same court in Volland v. McGee, 238 Wis. 598, 300 N.W. 506.
It should first be observed that our statute defining residence district does not refer to frontage, as does the section defining business district, but merely requires that the territory “is in the main improved with residences and buildings in use for business.” On the basis of this distinction alone we could reject the Wisconsin “per cent, of frontage” test, as our statute indicates a legislative intent that a more flexible rule be applied in determining whether a given area is a “residence district” for purposes of speed regulation. However, other reasons can be advanced militating against adoption of the strict mathematical rule. The very fact that our legislature did adopt a rigid- formula in defining a business district in the same statute would indicate that the failure to do so in defining residence district was a conscious attempt to provide a more elastic rule in relation thereto.
In construing a statute almost identical to ours, the New Jersey court expressly rejected the argument that “mainly occupied” meant fifty per cent of the total frontage of the buildings, in Baker v. Court of Special Sessions, 1940, 125 N.J.L. 127, 15 A.2d 102, 103, saying:
" * * * we are unable to take that view of the matter. If it were to prevail, it would mean that where a locality had been laid out into a series of large and handsome places, with average frontage of say 200 feet each, one house on each lot, it could not be classed as ‘residential’ in the intendment of the statute, unless more than 50 per cent, of the total frontage was occupied by residences. We think the evidence satisfactorily showed a residential status in the in-tendment of the statute.”
*78 Appellant next quotes from Bowling Green-Hopkinsville Bus Co. v. Adams, Ky.1953, 261 S.W.2d 14, a case involving a statute identical to ours, and the same action by the trial judge in instructing the jury that if they were to determine the location of the accident was a residential district, as defined by statute, a lower lawful speed limit would apply. The Court of Appeals reversed, holding that as the facts were undisputed, and the only buildings within three hundred feet of where the accident occurred were a church and a small shop with a residence in back, the trial judge should have determined as a matter of law that the location was not a residential district within the meaning of the statute. We have no quarrel with this case, but where there were admittedly a number of buildings in the immediate area, and there is a dispute as to exactly how many and their distances, it is not error to submit the question of the character of the area to the jury.
It has previously been held in Galwey v. Pacific Auto Stages, 1929, 96 Cal.App.169, 273 P. 866, that under the circumstances the trial judge properly submitted to the jury the determination of whether an accident occurred in a residence district as defined by statute.
Appellant’s second question, relating to the propriety of charging the jury on the “last clear chance” doctrine, raises a more serious problem.
It has been argued that the error, if any, is harmless because if the facts do not warrant its application the jury will not apply it, but our Supreme Court has previously indicated that instructing the jury on this doctrine where the facts do not justify the charge is reversible error; Miami Transit Co. v. Goff, Fla.1953, 66 So.2d 487; Ippolito v. Brenner, Fla.1954, 72 So.2d 802. We also feel that a doctrine that has caused as much confusion among the legal profession as this one has is certain to be potentially misleading and confusing to a lay jury where the facts do' not call for its consideration.
While the question is admittedly close, considering the amount of latitude we must afford the trial judge’s discretion, we do not think the charge should have been given in the instant case. The record reveals that the trial judge himself expressed some uncertainty over the applicability of the doctrine.
In considering the facts it should first be kept in mind that the accident occurred at night with a fog heavy enough to require defendant to operate his windshield wipers, at least at intervals. The decedent’s account of the mishap was that he waited for two cars going south to pass and then he started across the highway. The defendant’s testimony was that almost immediately after passing a car going south the pedestrian appeared right in front of him, and there was no time to avoid the accident. These stories are not inconsistent, and do not indicate that the defendant did see, or with the employment of due care, should have seen the decedent in time to avoid the accident. Plaintiff did introduce the testimony of one Lonnie McClelland, one of the southbound drivers, to impeach defendant’s testimony in this regard. The testimony adduced from this witness was to the effect that he passed a car which must have been defendant’s about two hundred feet south of Steven’s Grocery, which was in turn some one hundred feet or more south of the point of impact, the inference being that defendant could not have just passed a southbound car when the decedent first came into view. However, from our examination of the record it does not appear that the location of the other southbound car which the decedent related waiting for was ever explained. Hence, it may have been this car that the defendant passed just prior to seeing decedent for the first time, and McClelland’s testimony is therefore inconclusive. We are aware that defendant testified as to seeing only two sets *79 •of headlights as he approached the scene of the accident, and he was of the impression that one belonged to decedent’s truck parked at the edge of the road. However, other witnesses were sure that 'the truck lights were off.
Falnes v. Kaplan, Fla.1958, 101 So.2d 377, 381, while not on all fours with the present case, did involve a situation where a pedestrian was on a highway at night time and some of the language is pertinent here. Mr. Justice Thomas, in that case stated:
“It would, in our opinion, be unjust to hold that a motorist should expect a pedestrian to be strolling where he had no right to stroll and then be held responsible for damages if a jury should decide that had the motorist been on the lookout for what there was no reason to anticipate he would have had the last clear chance to avoid injury.
* * * * * *
“In the instant controversy the ap-pellee-driver was shown to have been travelling alone at a moderate speed, and there was no positive testimony of inattentiveness on his part. These circumstances combined with the ones we have already related did not, in our opinion, present a situation from which it could have been deduced that the driver was so heedless that the court was obliged to charge the jury -on the doctrine.”
We would conclude by reiterating the final paragraph of Yousko v. Vogt, Fla.1953, 63 So.2d 193, 194:
“A trial judge when faced with a request for a charge upon the doctrine of the ‘last clear chance’ should be extremely cautious. Such a charge should never be given unless the evidence clearly demonstrates its applicability. If this be not true, the giving of such a charge would either work an advantage to the plaintiff to which he would not be entitled or at least would tend to confuse, rather than aid, the jury in the performance of its duty.”
The judgment must be reversed for a new trial.
Reversed.
KANNER, C. J., and O’CONNELL, STEPHEN C., Associate Judge, concur.