56 N.J. Super. 323 (1959)
152 A.2d 865
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM ZEUS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division, Criminal.
Argued June 5, 1959.
Decided June 29, 1959.
*324 Mr. Carroll K. Sellers, Assistant Prosecutor, appeared for plaintiff-respondent (H. Douglas Stine, Union County Prosecutor, attorney).
Mr. Charles E. Taylor appeared for defendant-appellant.
Mr. Martin D. Cohen appeared as amicus curiae for Mr. Louis J. Cohen, attorney (Messrs Cohen, Rosenbaum & Scher, attorneys).
The opinion of the court was delivered by BARGER, J.C.C.
This is an appeal by the defendant from a conviction in the Municipal Court of the Township of Springfield of speeding in violation of N.J.S.A. 39:4-98(b).
The appeal is heard by this court on the transcript of the trial below. The transcript consists of the stipulations of counsel as to the facts which are not in dispute and the testimony of the assistant engineer of the township, who appeared and testified as to the preparation and accuracy of Exhibit S-1, being a survey map of the area concerned. Exhibit S-2 is a copy of the zoning map of the township indicating that the area concerned is zoned residential.
The defendant is charged with operating a motor vehicle on Baltusrol Road on a public highway in the Township of Springfield at about 4:40 P.M. on April 15, 1959, at a speed of 41 m.p.h. in a 25 m.p.h. zone, in violation of N.J.S.A. 39:4-98(b). The defendant admits that he was so operating, but contends that the area involved is not *325 a residential district and it does not qualify as such under the definition set forth in N.J.S.A. 39:1-1, and actually is a 50 m.p.h. zone as provided in N.J.S.A. 39:4-98(c), and therefore he is not guilty of the charge referred to. The only legal issue before this court for its determination in this appeal is the meaning of the definition of "residence district" as set forth in N.J.S.A. 39:1-1.
This is the statutory definition:
"`Residence district' means that portion of a highway and the territory contiguous thereto, not comprising a business district, where within any 600 feet along such highway there are buildings in use for business or residential purposes which occupy 300 feet or more of frontage on at least 1 side of the highway."
In order to determine the intent of the Legislature it is necessary to consider the status of the definition as defined prior to amendment in 1951:
"`Residence district' or `residential district' means the territory contiguous to a highway not comprising a business district when the frontage on the highway for a distance of three hundred feet or more is mainly occupied by dwellings, or by dwellings and buildings in use for business."
The inquiry of the court is directed to whether in the present statute the interpretation of the word "frontage" in the formula established by the definition has reference to buildings or the lands upon which any such buildings are erected and fronting on the highway. If the meaning is construed to be highway frontage of the lands on which the buildings are erected, then the area comes within the formula and the speed limit would be 25 m.p.h., as it is admittedly a residence area as a matter of character. If, on the other hand, the meaning of frontage in the definition is construed to be the frontage of the buildings erected thereon, then the area does not come within the formula and the speed limit would then be 50 m.p.h., because under Exhibit S-1 within any 600 feet along the highway there is 300 feet *326 of residential land frontage, but not 300 feet of residential building frontage.
Exhibit S-1, being a survey map of the area concerned, indicates that from the Township of Springfield  City of Summit corporate boundary line south on Baltusrol Road for a distance of approximately 1,200 feet, on the easterly side there are seven dwelling houses erected upon parcels of land having a frontage on the highway varying from 135.65 feet to 265.80 feet, and on the westerly side there are two dwelling houses and a stable having a highway frontage varying from 68 feet to 320.32 feet. The Police Department of the Township of Springfield, on the day of the alleged violation, had erected a speed checkpoint with their electronic timing hoses across the highway 88 feet apart and approximately in the center of the highway referred to, referring to its length. The timing hoses mentioned were erected opposite unimproved lands on the east and a dwelling house on the west. The exhibit indicates sufficient land but not building frontage upon applying the formula.
The word "frontage" in its common and legal accepted meaning has reference to the frontage of any premises on a public street or highway, and not to the frontage of the buildings erected thereon. It is also construed to mean the space available for the erection of buildings. 17A Words and Phrases (Frontage), p. 418; Ballantine Law Dictionary (2d ed.), p. 533; Black's Law Dictionary (4th ed.), p. 797; Wallace v. Kramer, 296 Mich. 680, 296 N.W. 838 (Sup. Ct. 1941).
The definition prior to the 1951 amendment was construed in Baker v. Essex County Court of Special Sessions, 125 N.J.L. 127 (Sup. Ct. 1940); however, a reading of the statute then under construction indicates that the words in dispute in the definition were "mainly occupied." It was argued that the meaning of these words required a mathematical determination that more than 50% of the frontage had to be actually covered by buildings. The court in the cited case refused to accept that view because if it were to *327 prevail those areas where large plots were devoted to residential use could not come within the classification even if residential in character, and the court rejected the mathematical contention for one indicating that the wording referred to the general character of the area concerned and held that the area described in the cited case was within the intendment of the statute a residence district. The definition, as construed in the cited case, remained in effect for approximately 20 years until amended in 1951. The former definition is important only for comparison purposes in determining the change intended and as later indicated in this opinion, it appears that the Legislature adopted in 1951 the mathematical contention rejected by the court.
What is the intendment of the Legislature under the present definition? The definition was the subject matter of comment in Melone v. Jersey Central Power & Light Co., 30 N.J. Super. 95 (App. Div. 1953) and the court states:
"To constitute any 600 feet a residence district, there must be, at least, on one side of the street, for example, 10 buildings, each averaging 30 feet front, each on a lot averaging 60 feet front; or, for example, 7 buildings each averaging 43 feet front, each on a lot averaging 86 feet front. A policeman testified that it was a residential district, but on cross-examination it appears clearly that he did not have in mind the statutory definition. Defendant Tears testified that it was a semi-residential district. At any event the testimony, taken with a photograph of the highway at the intersection (the photograph looks north, but Tears said the area `looks pretty much the same in both directions at that point in the highway'), furnished ample evidence upon which the jury could have found that this was not a residential district."
This language indicates that the court construed the definition as applying to building frontage rather than land frontage.
The purpose of the 1951 amendments of the statutory rules and regulations relating to motor vehicles was to modernize these rules and regulations, as it was the first general modification occurring in over 20 years, and to bring these rules and regulations in this State into reasonable *328 conformity with those of other states in the area insofar as it was possible according to the experience of this State. The amendments of 1951 generally followed the wording of the Uniform Vehicle Code, with such changes as appeared necessary in order to meet the experience and conditions found to exist in this State.
Speed limits should be realistic in order to meet the everchanging traffic situation in this State resulting from greater density of people, vehicles and transformation of areas. It was recognized by the amendment that there would be areas in which the established speeds would not be realistic or reasonable under the circumstances existing and so there was included in the amendment of N.J.S.A. 39:4-98 a paragraph that when an engineering and traffic investigation disclosed that an existing speed limit was not reasonable or safe then, with the approval of the Director of Motor Vehicles, municipal officials could by ordinance as to the highways under their jurisdiction designate a reasonable and safe speed limit and appropriate signs are then erected so that the motorist may have proper notice of the established speed limit. This provision provides municipal officials with a procedure to correct any local condition as a matter of safety and where conditions in any area create doubt as to the established speed limit, such doubt can be removed in this manner. N.J.S.A. 39:4-8; N.J.S.A. 39:4-98; N.J.S.A. 39:4-198.
The obvious purpose of the statutory definition is to provide notice to the motoring public of the speed limit fixed in the districts mentioned and to provide by the formula a recognizable-by-observation guide. The character of an area is generally determined by the character of the improvements upon the lands in the area. It is important to note that because of the mathematical contention of the meaning of the words "mainly occupied" in the former definition, the Legislature apparently intended to be more specific in the amendment of 1951 and actually established a mathematical 50% requirement under the language where within *329 any 600 feet along such highway there must be 300 feet or more of frontage on at least one side of the highway. In effect it adopted the mathematical contention previously referred to in Baker v. Essex County Court of Special Sessions, supra, and by the amendment indicated a change in intendment as established by the cited case. The definition does not follow verbatim the definition set forth in the Uniform Vehicle Code which reads in part, "for a distance of 300 feet or more is in the main improved with residences," which was changed to "where within any 600 feet along such highway there are buildings in use for business or residential purposes which occupy 300 feet or more of frontage."
It appears obvious and clear to this court that in order for any given area to qualify as a residence district under the Statute the following factors must be present:
1. Within any 600 feet along any such highway,
2. There are buildings in use for business or residential purposes, and
3. Which buildings occupy at least 300 feet of building frontage.
4. On at least one side of such highway.
A consideration of the evidence in this case indicates that the area involved does not meet the third factor referred to and there is not 300 feet of building frontage.
This court concurs in the reasoning set forth in Melone v. Jersey Central Power & Light Co., supra, and reaches the conclusion, as indicated, that the area in which the defendant was operating his motor vehicle does not qualify as such residence district under the formula set forth in the definition. The speed limit, accordingly, was not 25 m.p.h. but 50 m.p.h. The vehicle of the defendant was operated at a lesser speed than the maximum fixed, and therefore he is not guilty of the offense charged and is accordingly acquitted.
A judgment may be presented accordingly.