ACCEPTED
04-014-00494-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/19/2015 3:49:16 PM
KEITH HOTTLE
CLERK

## NO. 04-14-00494-CV

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

**United Parcel Service, Inc. and Roland Leal**,

Appellants,

**v.**

**Robert Scott Rankin, Individually, Rachelle Rankin, Individually and As Next Friend for Avery Rankin, a Minor, As Next Friend for Kara Rankin, a Minor and As Next Friend for Samuel Rankin, a Minor**

Appellees.

On Appeal from the 224th Judicial District Court, Bexar County, Texas
Honorable Cathy Stryker, Presiding Judge
Trial Court Cause No. 2011-CI-07922

### APPELLANTS' REPLY BRIEF

W. Randall Bassett
*Pro Hac Vice Pending*
Bradley W. Pratt
*Pro Hac Vice Pending*
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
rbassett@kslaw.com
bpratt@kslaw.com

H. Victor Thomas
State Bar No. 19851500
Thomas Michael Gutting
State Bar No. 24067640
King & Spalding, LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290
vthomas@kslaw.com
tgutting@kslaw.com

Ricardo R. Reyna
State Bar No. 16794845
Audrey A. Haake
State Bar No. 08658100
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2302
Telephone: (210) 979-0100
Facsimile: (210) 979-7810

**Counsel for Appellants United Parcel Service, Inc. and Roland Leal**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................6

    A.    The Interpretation and Application of the Transportation Code is a Question of Law that Should Have Been Decided by the Trial Court, Not the Jury. ..............................................................................6

    B.    Defendants Did Not Invite Error or Waive their Objections to the Negligence *Per Se* Questions and Instructions. ...................................10

    C.    The Plaintiffs' and Jury's Interpretation of Section 541.102(2) Is Incorrect; "Residences" Means Not Just the Dwellings, but also the Land Being Used For Living Purposes. ........................................12

    D.    Even under Plaintiffs' Interpretation of Section 541.102(2), the Evidence Is Legally and Factually Insufficient to Support the Jury's Finding that the Car Was Parked Outside of a "Residence District." ........................................................................................19

        1.    The Google photograph is insufficient proof...........................20

        2.    The Lori Carroll Affidavit is insufficient proof; in fact, its admission was reversible error....................................................25

    E.    Defendants Did Not Waive their Objection to the Trial Court's Erroneous Submission of an Unsupported Negligence *Per Se* Claim and Such Error is Reversible. .................................................27

    F.    The Jury's Findings in Questions 2 and 3 (Proximate Cause) and Question 4 (Mr. Rankin Was Only 50% Responsible) Are Not Supported by Sufficient Evidence.......................................................31

CERTIFICATE OF COMPLIANCE .............................................................................35

CERTIFICATE OF FILING AND SERVICE....................................................................35

APPENDIX............................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.,*
212 S.W.3d 665 (Tex. App.—Austin 2006, no pet.)........................................6

*Ace Fire Underwriters Ins. Co. v. Simpkins,*
380 S.W.3d 291 (Tex. App.—Fort Worth 2012, no pet.)................................9

*Benge v. Williams,*
01-12-00578-CV, 2014 WL 6462352 (Tex. App.—Houston [1st
Dist.] Nov. 18, 2014, no. pet. h.) ................................................................30

*C.M. Asfahl Agency v. Tensor, Inc.,*
135 S.W.3d 768 (Tex. App.—Houston [1st Dist.] 2004, no pet.)..................7

*CHCA Woman's Hosp., L.P. v. Lidji,*
403 S.W.3d 228 (Tex. 2013) .......................................................................12

*Ex parte City of Corpus Christi,*
427 S.W.3d 400 (Tex. App.—Corpus Christi 2013, pet. denied
(Apr. 25, 2014)) ...........................................................................................6

*Crown Life Ins. Co. v. Casteel,*
22 S.W.3d 378 (Tex. 2000).........................................................................28

*In re Dep't of Family Protective Servs.,*
273 S.W.3d 637 (Tex. 2009) .......................................................................10

*In re Expunction of S.S.A.,*
319 S.W.3d 796 (Tex. App.—El Paso 2010, no pet.) ...................................12

*Floeck v. Hoover,*
52 N.M. 193, 195 P.2d 86 (1948)......................................................21, 23, 24

*Gordon v. Cozart,*
110 So. 2d 75 (Fla. 2nd DCA 1959)...........................................................18

*Hayes v. Blake,* No. 03-00-00065-CV,
2000 WL 1028206 (Tex. App.—Austin July 27, 2000, no pet.).................6, 7, 9

2

*Heritage Hous. Dev., Inc. v. Carr,*
    199 S.W.3d 560 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ....................... 29

*Hines v. Brandon Steel Decks, Inc.,*
    886 F.2d 299 (11th Cir. 1989) ................................................................ 27

*Marshall v. Mullin,*
    320 P.2d 258 (Or. 1958) ...................................................................... 18

*McFarland v. Boisseau,*
    365 S.W.3d 449 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ....................... 28

*McGill v. Baumgart,*
    288 N.W. 799 (Wis. 1939) .................................................................... 18

*Mo. Pac. R.R. Co. v. Limmer,*
    180 S.W.3d 803 (Tex. App.—Houston [14th Dist.] 2005), rev'd on
    other grounds, 299 S.W.3d 78 (Tex. 2009) ............................................... 30

*Mooneyhan v. Benedict,*
    284 S.W.2d 741 (Tex. Civ. App.—Austin 1955, writ ref'd n.r.e) ..................... 22

*Moughon v. Wolf,*
    576 S.W.2d 603 (Tex. 1978) ................................................................... 8

*Nat'l Plan Administrators, Inc. v. Nat'l Health Ins. Co.,*
    150 S.W.3d 718 (Tex. App.—Austin 2004), rev'd on other
    grounds, 235 S.W.3d 695 (Tex. 2007) ....................................................... 6

*Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se.*
    *Texas, Inc.,*
    975 S.W.2d 546 (Tex. 1998) ................................................................. 23

*Owens Corning v. Carter,*
    997 S.W.2d 560 (Tex. 1999) ................................................... 11, 12, 14, 15

*Ragsdale v. Progressive Voters League,*
    801 S.W.2d 880 (Tex. 1990) ................................................................. 10

*Romero v. KPH Consolidation, Inc.,*
    166 S.W.3d 212 (Tex. 2005) ................................................................. 29

*State v. Zeus,*
    56 N.J. Super. 323 (Cty. Ct. 1959) ( New Jersey) ................................................18

*Sullivan v. Dollar Tree Stores, Inc.,*
    623 F.3d 770 (9th Cir. 2010) ...............................................................................27

*Texas Mut. Ins. Co. v. Morris,*
    287 S.W.3d 401 (Tex. App.—Houston [14th Dist.] 2009), judg-
    ment rev'd, 383 S.W.3d 146 (Tex. 2012) ...........................................................30

*Thoms v. Dowdy,*
    112 S.E.2d 868 (Va. 1960) ...................................................................................18

*Thota v. Young,*
    366 S.W.3d 678 (Tex. 2012) ................................................................................28

*Turner v. Cruz,*
    2010 WL 5545392 (Tex. App.—San Antonio Dec. 29, 2010, no
    pet.) .......................................................................................................................32

*Zavala v. Burlington N. Santa Fe Corp.,*
    355 S.W.3d 359 (Tex. App.—El Paso 2011, no pet.) ..........................................21

*Zeus Enters., Inc. v. Alphin Aircraft, Inc.,*
    190 F.3d 238 (4th Cir. 1999) ...............................................................................27

**Statutes**

TEX. CIV. PRAC. & REM. CODE §33.001 ................................................................31

TEX. CIV. PRAC. & REM. CODE § 71.051 ...............................................................14

TEX. GOV. CODE § 311.023 (4) ..............................................................................14

TEX. PROP. CODE § 27.001 ....................................................................................14

TEX. TRANSP. CODE ANN. § 541.102(3) .................................................................13

TEX. TRANSP. CODE § 541.102(2) ................................................................*passim*

TEX. TRANSP. CODE § 545.301(a) .............................................................................7

**Other Authorities**

FED. R. EVID. 803 ................................................................................26, 27

TEX. R. CIV. P. 278 .................................................................................9

TEX. R. EVID. 401 .................................................................................25

## ARGUMENT

### A. The Interpretation and Application of the Transportation Code is a Question of Law that Should Have Been Decided by the Trial Court, Not the Jury.

The trial court erred by requiring the jury to interpret and apply Tex. Transp. Code § 541.102(2) (which the court acknowledged was "remarkably vague," RR 9:199), rather than interpreting the statute and applying it to the undisputed facts.

Plaintiffs argue that the standard of review for this complaint is abuse of discretion, not *de novo*. That is incorrect. The interpretation of an ordinance or statute is a question of law, and it is error for a trial court to submit this question of law to the jury. *See Ex parte City of Corpus Christi*, 427 S.W.3d 400, 405 n. 3 (Tex. App.—Corpus Christi 2013, pet. denied (Apr. 25, 2014)). A question of legal error is reviewed *de novo*. *Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.*, 212 S.W.3d 665, 669 (Tex. App.—Austin 2006, no pet.). Likewise, questions of law contained in jury instructions are reviewed *de novo*. *See Nat'l Plan Administrators, Inc. v. Nat'l Health Ins. Co.*, 150 S.W.3d 718, 730 (Tex. App.—Austin 2004), rev'd on other grounds, 235 S.W.3d 695 (Tex. 2007).

Appellants' Brief cited the closely analogous decision of *Hayes v. Blake*, No. 03-00-00065-CV, 2000 WL 1028206, *3-4 (Tex. App.—Austin July 27, 2000, no pet.), which explained, "whether the ordinance applies to the subdivision [where the incident occurred] is a question of law," and concluded, as a matter of law, that the ordinance did not apply because the subdivision was located in a

6

"limited purpose territory." *Plaintiffs do not address or distinguish this decision because they cannot.* Under the *Hayes* authority, the trial court erred in submitting to the jury the legal question of whether 109 Ranger Creek Road [where the incident occurred] was located in a "residence district," as defined by section 541.102(2).

The trial court also erred in submitting the negligence *per se* questions and instructions in Questions 1 and 2 because the evidence did not support them. The standard of review for this complaint is also *de novo*, not abuse of discretion. *See C.M. Asfahl Agency v. Tensor, Inc.,* 135 S.W.3d 768, 780 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (whether legally sufficient evidence supports submitting a theory of recovery to the jury presents a question of law that is reviewed *de novo*).

As discussed below, whether the Court adopts Plaintiffs' or Defendants' interpretation of the statute, the evidence did not support submitting these questions to the jury.

Plaintiffs argue that the submission of Question 1 to the jury is supported by the comment to PJC 5.1, which provides that when the court is uncertain as to whether the violation of a statute is negligence *per se*, it would be better to submit both a separate question asking if the statutory conduct was committed, and a broad form question. *See* Comment to PJC 5.1. This is a red herring. Neither the trial court nor the parties had any uncertainty as to whether a violation of TEX. TRANSP. CODE § 545.301(a) (which prohibits parking a car on the roadway "outside" of a "residence district") would constitute negligence *per se*. Rather, the

7

only uncertainty was as to the meaning of a "residence district" as defined by section 541.102(2) (*e.g.*, whether "residences" meant dwellings or residential lots), which the trial court erroneously required the jury to decide.

Plaintiffs also argue that PJC 5.1 and decisions such as *Moughon v. Wolf, 576 S.W.2d 603, 605 (Tex. 1978)* indicate that, when violation of a statute is disputed, it is appropriate to ask the jury whether the defendant violated the statute which establishes a standard of care. *Moughon, 576 S.W.2d at 605*, gives, as an example, a jury question that asks whether the defendant failed to keep his vehicle within the right half of the roadway (a pure fact question). *Moughon* is inapplicable because it does not indicate that it is appropriate to require the jury to interpret and apply a statutory definition, such as "residence district"; it only indicates that the jury may be asked a question of fact – whether the defendant engaged in certain conduct.

Instead of requiring the jury to decide a thorny legal question, the trial court should have: (1) interpreted "residences" as used in section 541.102(2) to mean not just the dwellings, but also the residential improvements and land being used for living purposes; (2) held, as a matter of law, based on the uncontested Survey of five adjoining residential lots at 107, 109, 111, and 115 (Lots 1 and 2) of Ranger Creek Road that residence 109 was not outside a "residence district" (RR 17 (Pls' Ex. 26)); and (3) denied the submission of any negligence *per se* questions or instructions.

8

Plaintiffs also argue that the trial court may not take judicial notice of whether 109 Ranger Creek was within a "residence district," but, once again, this is a red herring. Defendants did not ask the trial court to take judicial notice of any fact, but rather asked that it determine the legal status of the address because that status had been conclusively proved through the uncontroverted Survey evidence. *See Hayes*, 2000 WL 1028206, at * 3-4. Only questions of fact are to be submitted to the jury. *See* Tex. R. Civ. P. 278. "When facts are conclusively established, there is no need to submit those issues to the jury." *Ace Fire Underwriters Ins. Co. v. Simpkins*, 380 S.W.3d 291, 303 (Tex. App.—Fort Worth 2012, no pet.).

Next, Plaintiffs argue that whether the car was "stopped, parked, or standing" at the time of the incident was a disputed fact that the jury had to determine. This argument misunderstands the issue. If the car was not stopped, it was not in violation of the Transportation Code as a matter of law, and there is no basis for negligence *per se*. If it was stopped, it is undisputed that it was stopped at 109 Ranger Creek Road. Therefore, the Court should not have submitted Question 1. It should have interpreted the statute, applied it to the undisputed fact that the accident occurred at 109 Ranger Creek Road, and determined that address is outside a "residence district." (Alternatively, if there was a genuine dispute for the jury to resolve, Plaintiffs should have asked the trial court to simply ask the jury whether the car was stopped when the accident occurred. This would have avoided the error of requiring the jury to construe an ambiguous statute.)

9

Regardless, on the actual trial record, there was no genuine question of fact for the jury to determine in this regard because there was no evidence the car was moving when the accident occurred, and Mr. Leal's testimony that he was parked is clear and uncontradicted. Although Plaintiffs argue that Mr. Leal was inconsistent as to whether, when the accident occurred, he was in the car, the key was in the ignition, and the truck was running, Mr. Leal never strayed from his testimony that the car was *parked* when Mr. Rankin collided. RR 5:67. Where, as here, "the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

## B. Defendants Did Not Invite Error or Waive their Objections to the Negligence *Per Se* Questions and Instructions.

The doctrine of invited error applies when a party requests that a trial court make a specific ruling and then complains about the ruling on appeal. *In re Dep't of Family Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009).

Plaintiffs argue that Defendants waived and invited the trial court's error in submitting Question 1 by stating during the charge conference, "if they want to argue to the jury in closing that the statute should be interpreted their way they are free to do that under the statutory definitions, and we're free to argue our interpretation of the statute." Not so. The trial court clearly understood that Defendants adamantly opposed the submission of the negligence *per se* claim.

10

Defendants objected to Questions 1 and 2 in the charge conference, and moved for a directed verdict on the negligence *per se* claim. *See* II CR 105-108; II CR 145 (Objection No. 3); RR 10:46-47.

Moreover, the quoted statement is misleading. Plaintiffs take it out of context to suggest a completely different, and inaccurate, meaning and omit the final clause, which provides part of its context.

At the charge conference, Plaintiffs requested that the trial court submit an additional instruction with Question 1 that defined a "residence" as a dwelling house that Plaintiffs argued was supported by *Owens Corning v. Carter*, 997 S.W.2d 560 (Tex. 1999). 10 RR 14. Defendants objected to this definition, arguing, among other things: (1) the requested definition was contrary to a correct interpretation of section 541.102(2); (2) the definition stated in *Owens Corning* was not relevant because it involved the interpretation of a different statute, and (3) defining the term "residences" using *Owens Corning* was erroneous and unnecessary because Plaintiffs were free to argue their interpretation of the statute during closing. 10 RR 14-19. The *entire* quotation states, "I mean, if they want to argue to the jury in closing that the statute should be interpreted their way, they are free to do that under the statutory definitions, and we're free to argue our interpretation of the statute, *but you shouldn't – I think it would inject error in this case if you put in the definition from a case [Owens Corning] that doesn't -- . . . .*" 10 RR 18-19 (emphasis added). None of these arguments invited the trial court to submit Question 1; they simply persuaded the trial court not to submit a definition

11

of "residence" from *Owens Corning* that was unrelated to the Transportation Code, and Defendants are not complaining on appeal about the trial court's refusal to submit that definition.

## C. The Plaintiffs' and Jury's Interpretation of Section 541.102(2) Is Incorrect; "Residences" Means Not Just the Dwellings, but also the Land Being Used For Living Purposes.

Plaintiffs argue that, even if UPS is correct that the trial court should have interpreted and applied section 541.102 instead of the jury, such error is harmless because the jury correctly interpreted the statute. None of Plaintiffs' contentions supporting this argument has merit.

Strikingly, Plaintiffs failed to respond in any way to Defendants' core argument that basic principles of statutory construction require giving different meaning to the word "residences" and the words "structures" and "dwelling houses" because the Legislature deliberately used the former in the "residence district" provision and the latter in the "urban district" provision within the same statute, section 541.102. "The aim of statutory construction is to determine and give effect to the Legislature's intent, which is generally reflected in the statute's plain language. We analyze statutory language in context, considering the specific section at issue as well as the statute as a whole." *CHCA Woman's Hosp., L.P. v. Lidji*, 403 S.W.3d 228, 231-232 (Tex. 2013) (citations omitted). Courts construing statutes "should [] read every word, phrase, and expression in a statute as if it were deliberately chosen, and likewise presume that words excluded from the statute are done so purposefully." *In re Expunction of S.S.A.*, 319 S.W.3d 796, 798-799 (Tex.

12

App.—El Paso 2010, no pet.) (citing *Gables Realty Ltd. P'ship v. Travis Central Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied)). Thus, selection of different terms within the same section of the same Transportation Code demonstrates, on the plain language of the Code itself, that those terms mean different things and that Defendants' interpretation is correct.

Contrast section 541.102, subsection 2 ("residence district"):

"Residence district" means the territory adjacent to and including a highway, if at least 300 feet of the highway frontage is primarily improved with (a) *residences* or (b) buildings used for business purposes and residences.

TEX. TRANSP. CODE ANN. § 541.102(2) (emphasis added), with 541.102, subsection 3 ("urban district"):

"Urban district" means the territory adjacent to and including a highway, if the territory: . . . (B) is improved with *structures* that are used for business, industry, or *dwelling houses* and located at intervals of less than 100 feet for a distance of at least one-quarter mile on either side of the highway.

TEX. TRANSP. CODE ANN. § 541.102(3) (emphasis added). This clear difference in the plain language of the statute must be given effect. Had the Legislature intended that only the "structures" or "dwelling houses" be considered in subsection 2, it would have used those terms as it did in subsection 3. Plaintiffs have no response to this argument except to offer an unsupported assertion that "residences" and "dwelling houses" are "the same thing" and refer only to dwellings. (Appellees' Br. at 24.) That assertion asks the Court to reject well-known and long-standing principles of statutory construction. The Legislature's

13

use of these different terms in subsection (2) ("residences") and subsection (3) ("structures" and "dwelling houses") makes no sense if these terms have exactly the same meaning.  The plain language of the statute is dispositive.

The Government Code provides that in construing a statute, a court may consider laws on the same or similar subjects.  *See* TEX. GOV. CODE § 311.023 (4). Other Texas statutes use the term "residence" to refer to both the structure and the land.  For example, section 27.001(7) of the Property Code states:  "Residence means the *real property and improvements* . . . ."  TEX. PROP. CODE § 27.001 (emphasis added).  Similarly, section 11.13(j)(1) of the Tax Code defines a "residence homestead" as "a structure . . . (together *with the land*, not to exceed 20 acres, and improvements used in the residential occupancy of the structure, if the structure and the land and improvements have identical ownership) . . . ."  TEX. TAX CODE § 11.13(j)(1) (emphasis added).  Plaintiffs argue that these statutes would not make sense or accomplish their purpose if the term residence meant only the structure.  That is exactly the point.  These statutes use the term "residence," precisely because the Legislature intended to encompass more than mere structures or dwelling houses.

Plaintiffs incorrectly argue that *Owens Corning v. Carter*, 997 S.W.2d 560, 570-71 (Tex. 1999) indicates that "residences," as used in section 541.102(2), means "dwelling houses."  However, *Owens Corning* did not address whether the term "residences" as used in section 541.102(2) encompasses only dwelling houses.  Rather, that case involved the interpretation of a different statute – section

14

71.051 of the Texas Civil Practice and Remedies Code (the Forum Non Conveniens statute). Section 71.051(e) provides that a court may not dismiss a claim for forum non conveniens under subsection (b) "if the plaintiff is a legal resident of this state." Section 71.051(h)(1) defines "legal resident" as an individual who intends the specified political subdivision to be his "permanent residence." The Texas Supreme Court noted that Black's Law Dictionary provided that "residence" means *the place where one actually lives* or has his home; a person's dwelling *place*. The Court therefore concluded that a "permanent residence," as used in section 71.051(h)(1), "requires a home and fixed *place of habitation* to which a person intends to return when away." *Id*. at 571 (emphasis added). Thus, the Court equates "residence" with a "place of habitation." That holding supports Defendants' position because "place of habitation," which means the "place where someone lives,"[1] encompasses both the house and the lot or land that are inhabited.

Moreover, to the extent that *Owens Corning* approved the use of dictionaries to interpret statutory terms, both the Cambridge Dictionary for American English and the Oxford's Dictionary also define "residence" as "the place where someone lives."[2] "The place where someone lives" is a broad term that includes not just a building, but also the lot and its residential improvements (such as fences, driveways, landscaping, yards, play areas, houses, garages, walkways, etc.) that are

---

[1] *See* http://www.merriam-webster.com/dictionary/habitation

[2] *See* http://dictionary.cambridge.org/us/dictionary/american-english/residence and http://www.oxforddictionaries.com/us/definition/american_english/residence.

15

used for living purposes. When mail is delivered to a residence, it is not said to be undelivered until a person removes it from their mailbox and physically passes the threshold of their dwelling house.

Plaintiffs also argue that Defendants' interpretation of section 541.102(2) would not provide fair notice to motorists that they are within a residence district. The opposite is true. Residential lots with improvements (like mailboxes, fences, driveways, and yards) that have more than 150 feet of highway frontage can easily be identified by motorists. This is certainly true here, as the Court can see from examining the photograph of Ranger Creek Road on page 13 of Appellants' Brief. A delivery driver or other motorist would have no trouble safely looking ahead and recognizing the mailboxes, driveways, gates, and residences along the roadway for far greater than 300 feet. (*See* Defs' Ex. 99E.)

By contrast, the Plaintiffs' interpretation is impractical and makes it virtually impossible for motorists to recognize and obey the law under real-world conditions. Drivers cannot be expected to accurately (much less safely) calculate, while driving on the roadway, the footage of the structures set back from the road and potentially obscured by trees or shrubbery, and then determine whether their sum is greater or less than 150 feet within a 300 foot section. The Legislature could not have intended commercial drivers to perform this difficult calculation in determining whether it is legal for them to park when making deliveries or collecting garbage.

Plaintiffs also argue that under UPS's interpretation of section 541.102, "if there were two houses on the entire 350,000 acre 666 Ranch in King County, Texas, it would qualify as a residence district." That argument ignores a key aspect of Defendants' interpretation, namely, that "residence" includes the dwelling and the *improved* land near the dwelling that is actually being used for residential purposes. The statute must be read in its entirety, and the rest of the residence district definition explains that the territory adjacent to the highway frontage should be "primarily improved with" residences. Thus, the King Ranch would not qualify as a residence district because the vast majority of the Ranch is being used to raise cattle, and is not "primarily improved with" residences. In any event, bad facts make bad law. The Court should be more concerned with the much more common circumstance of larger lots with modest homes which may be found throughout the State of Texas, and whether Plaintiffs' tortured reading of the Transportation Code could suddenly render deliveries, garbage pick-up, mail, and school bus stops suddenly illegal at all of these residences.

Finally, Plaintiffs argue that the weight of non-Texas decisions supports their interpretation that the term "residences," as used in section 541.102(2) of the Texas Transportation Code, means only the dwelling houses. This argument is flawed, because as a decision that Plaintiffs cites explains: "An investigation of the law pertaining to [these statutes] reveals that there are few cases and little harmony on the subject. . . . This lack of harmony is due in large part to the wide divergence in statutory language used by the various states in defining residence,

17

or residential district, but there are also conflicts between jurisdictions with similar or identical statutes." *Gordon v. Cozart*, 110 So. 2d 75, 76 (Fla. 2nd DCA 1959).

More important, there is a significant difference between the language of the statutes applied in most of the decisions that Plaintiffs cite and the Texas statute. Five of the eight non-Texas decisions that Plaintiffs cite involved statutes *using the term "dwellings"* – not "residences," as in the Texas statute,[3] and thus held that "dwellings" means only houses, and not the land, because that is how that term is defined.[4] This is a material distinction that, once recognized, actually shows that these cases support Defendants' interpretation – *i.e.*, "dwellings" means houses, whereas "residences" means residential lots. As discussed above, section 541.102 of the Texas Transportation Code recognizes the distinction between "residences" and "dwellings" by using one term ("residences") in subsection 2 (which defines "residence district") and another ("dwelling houses") in subsection 3 (which

---

[3] Appellees' Brief at 21-23, cites *Marshall v. Mullin*, 320 P.2d 258, 261-62 (Or. 1958) (ORS 483.020 states: "(1) 'Residence district' means the territory contiguous to a highway not comprising a business district when the frontage of such highway for a distance of 300 feet or more is mainly occupied by **dwellings** or by **dwellings** and **buildings** used for business."); *McGill v. Baumgart*, 288 N.W. 799, 802 (Wis. 1939) ("residence district", as used in sec. 85.40(7), of the Wisconsin statutes, is defined in sec. 85.10(29), Stats., as "The territory contiguous to a highway not comprising a business district where the frontage on such highway for a distance of three hundred feet or more is mainly occupied by **dwellings** or by **dwellings** and **buildings** in use for business."); *Thoms v. Dowdy*, 112 S.E.2d 868, 869 (Va. 1960) (Code, § 46.1-1(24), defines a residence district as "The territory contiguous to a highway not comprising a business district where seventy-five per centum or more of the total frontage, on both sides of the highway, for a distance of three hundred feet or more is occupied by **dwellings** or by **dwellings** and **buildings** in use for business purposes."); *State v. Zeus*, 56 N.J. Super. 323 (Cty. Ct. 1959) ( New Jersey statute states: "Residence district' or 'residential district' means the territory contiguous to a highway not comprising a business district when the frontage on the highway for a distance of three hundred feet or more is mainly occupied by **dwellings**, or by **dwellings** and buildings in use for business.' ); *State v. Bastian*, 78 N.J. Super. 49 (Cty. Ct. 1962) (same).

[4] "Dwelling" is "a shelter (as a house) in which people live." http://www.merriam-webster.com/dictionary/dwelling

18

defines "urban district"). If the Texas Legislature had intended residences to mean only dwelling houses, it would have used the term dwelling houses just as it did in subsection 3, and just as these other states did in their statutes defining a residence district. But that is not what the Texas Legislature did; it deliberately used "residences" instead.

Significantly, Plaintiffs state on page 40 of their Appellees' Brief that the jury saw maps and photographs that showed residences on either side of 109 Ranger Creek Road and that "the Rankins never contested that there were houses on either side of 109 Ranger Creek Road; it is simply something that was not in dispute." This is further supported by the uncontested Survey showing adjacent residential lots for over 300 feet. RR 17 (Pls' Ex. 26). Therefore, if this Court concludes, as it should, that under section 541.102(2) residences includes the frontage lots primarily improved for residential purposes, then, as a matter of law, 109 Ranger Creek Road is within a "residence district," and the jury's finding in Question 1 should be reversed.

**D. Even under Plaintiffs' Interpretation of Section 541.102(2), the Evidence Is Legally and Factually Insufficient to Support the Jury's Finding that the Car Was Parked Outside of a "Residence District."**

Appellees' Brief points to only two pieces of evidence that they claim support their contention that there was less than 150 feet of structural frontage within 300 feet of 109 Ranger Creek Road: (1) the aerial Google photograph, Defs' Exhibit 93A, and (2) the Lori Carroll Affidavit.

19

### 1. The Google photograph is insufficient proof.

Plaintiffs did not present this Court with the Google photograph, either in their brief or an appendix. It is easy to see why. The grainy, distant aerial photograph is incompetent evidence for accurately calculating the structural footage, as required for Plaintiffs to meet their burden:



This aerial Google photograph has multiple defects that make it insufficient to estimate, much less accurately prove, the dimensions and relative proportions of the structures. First, the photo was taken from more than 3,340 feet above and the objects shown are very small. Second, a significant part of the highway frontage within 300 feet to both the West and the East of 109 Ranger Creek Road is

obscured by trees, making it impossible to see all of the structures, much less determine their dimensions.  Third, the accident occurred on July 15, 2009, but the photo is dated 2013.  There is no evidence in the record that the photograph shows the structures that existed when the accident occurred.  Plaintiffs failed to respond to this argument in their brief because they failed to present the jury with any such proof.  Fourth, the scale shown on the map is only for 900 feet to the West of 109 Ranger Creek Road, and there is no scale shown for 300 feet to either the West or East of that address (and, indeed, no designation of that statutorily significant portion at all).  The jury had no way to accurately calculate the structural footage within the relevant portion of highway frontage.  At best, the jury could only guess from the photo whether the frontage of the structures was not more than 150 feet to both the East and the West of 109 Ranger Creek Road.  "Evidence that is so slight as to make any inference a guess is in legal effect no evidence."  *Zavala v. Burlington N. Santa Fe Corp.*, 355 S.W.3d 359, 370 (Tex. App.—El Paso 2011, no pet.).

It is therefore no surprise that several courts (cited in Appellants' Brief) have held that "[a] photograph cannot be relied upon as proof in itself of the dimensions of the depicted object or objects, and cannot be made properly available to establish the relative proportions of such objects . . . ."  *See, e.g., Floeck v. Hoover, 52 N.M. 193, 195 P.2d 86, 88 (1948)*.  Plaintiffs argue that these decisions should be disregarded because photographic technology was allegedly different when these cases were decided.  This is an odd assertion given the quality of the Google

21

photograph (reproduced above), which the Court can now see is grainy, obscured by trees and other impediments, taken from thousands of feet above the structures that should be measured, and not scaled in a manner useful to making this kind of structural footage measurement or scaled at the place to be measured. In any event, the accuracy of Plaintiffs' assertion is highly questionable. This Court can take judicial notice of the fact that photos taken in the 1940s, such as those widely published in Life Magazine, are not significantly less accurate or detailed than the Google photograph above.

Plaintiffs also argue that Texas courts take a different view of photographic evidence than these courts. However, neither decision cited by Plaintiffs actually supports that contention. In *Mooneyhan v. Benedict*, 284 S.W.2d 741, 743 (Tex. Civ. App.—Austin 1955, writ ref'd n.r.e), the Court of Appeals held that the trial court did not err in declining to take judicial notice that the speed limit where the collision occurred was 45 miles per hour because there was no evidence that the collision occurred in either a business or residential district. The court noted that "from photographs of the vicinity which are in the record the territory adjacent to the highway appears to be open country." *Id.* at 743. Thus, at most, *Mooneyhan* indicated in *dicta* that photographs may constitute some evidence that the territory adjacent to a highway is not occupied with any structures. *Mooneyhan*'s holding in no way holds that a distant aerial photograph, like the Google photo, may be relied on to prove *the dimensions* and relative proportions of building structures.

22

In *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Texas, Inc.*, 975 S.W.2d 546, 563 (Tex. 1998), photographs of abortion clinics that were being protested were offered into evidence to prove there was a need for a buffer zone to insure access into the clinics and to protect the clinics' operations from interference by the protesters' noise. There is no indication that the parties or the court attempted to rely on these photographs to prove the dimensions or relative proportions of objects shown in the photographs.

Just because a photograph may be used as evidence for one purpose does not mean that it is sufficient proof for every purpose. Plaintiffs cite no decision that a distant aerial photograph, such as Exhibit 93A, is sufficient to prove the dimensions and relative proportions of objects shown in the photograph.

The standard of proof that Plaintiffs were required to meet under their (incorrect) interpretation of the statute is explained in *Floeck v. Hoover*, 52 N.M. 193, 195 P.2d 86, 89 (1948). The New Mexico Supreme Court observed that the New Mexico statute's use of the terms "dwellings" and "buildings" meant a residence district is determined by measuring those dwellings and buildings.[5] The court held that the trial court correctly refused an instruction of the statutory definition of "residence district" because plaintiff did not offer sufficient, competent proof of the measurements of the frontage of all of the buildings. *Id.* at 89. A witness testified that the footage of the buildings at issue was *approximately* 410 to 415 feet, "but he did not give the dimensions of any of the buildings." *Id.*

---

[5] Again, this is a critical difference from the Texas statute, which deliberately uses the term "residences" instead of "dwellings."

The New Mexico Supreme Court held: "The burden of proof was upon the plaintiff to show by *actual measurements* that the area occupied by the buildings, to the exclusion of the vacant yard space, was more than 50 percent of the 300 feet area. He failed to meet such burden." *Id.* (emphasis added). Thus, actual, not approximate, measurements must be shown. Plaintiffs failed to meet this burden.

Plaintiffs argue, without any supporting authority, that Defendants invited error and are estopped from arguing that the Google photograph is insufficient to support the jury's finding that the car was parked outside of a residence because Defendants introduced it. Respectfully, this is nonsense. Defendants introduced the Google photo to show that 109 Ranger Creek Road was surrounded by residences (places where families lived), and, indeed, that is exactly what the former resident of 109 Ranger Creek Road confirmed in her testimony when presented with that photograph. By introducing the Google photograph for that purpose, Defendants did not concede that Plaintiffs' interpretation of section 541.102(2) is correct, or that the photograph was sufficient to prove the dimensions of the structures shown therein. That a photograph may be adequate proof for one purpose does not mean that it is adequate for all purposes.

Plaintiffs claim that because Defendants never argued at trial that the Google photograph was inadequate, Plaintiffs were denied the opportunity to offer additional evidence to cure this defect. This claim ignores the Plaintiffs' burden of proof. Texas law does not require Defendants to point out at trial that the Google photograph was insufficient to prove the dimensions of the structures. Rather, it is

24

Plaintiffs' responsibility to evaluate the sufficiency of the Google photograph to prove their negligence *per se* claim.

> ### 2. The Lori Carroll Affidavit is insufficient proof; in fact, its admission was reversible error.

Plaintiffs also argue that the jury's finding in Question 1 is supported by the affidavit of Lori Carroll. This is a surprising argument, given that Plaintiffs simultaneously argue that the erroneous admission of that affidavit was harmless because it was unimportant to Plaintiffs' case. Plaintiffs cannot have it both ways.

To this day, Plaintiffs have not offered a single argument as to why the Carroll Affidavit is *relevant*. Evidence is only relevant if it makes the existence of some fact of consequence to the determination of the matter more probable or less probable. TEX. R. EVID. 401. All parties agree the Carroll Affidavit states that 109 Ranger Creek Road is not within a residence district in the city limit of Boerne, Texas, but also that 109 Ranger Creek Road is not within the Boerne city limits. RR 13 (Pls' Ex. 15). Section 541.102(2) does not state that an area must be within a city limit to qualify as a "residence district." The Texas Transportation Code governs roads everywhere in the state, not just roads within city limits (indeed, section 541.102(2) actually refers to the "highway"). The Affidavit, therefore, conveys nothing about the issue before this jury. In fact, when Plaintiffs argued to the trial court that the affidavit proved that 109 Ranger Creek Road was in a "residence district," the trial court disagreed, stating: "that's not what she said. "She said it was not in the city." RR 9:196-97.

Thus, it appears that Plaintiffs' only purpose in presenting this official-sounding affidavit was to confuse the jury, and mislead it into believing, incorrectly, that an address had to be within the city limit to qualify as a "residence district" under the Transportation Code. Plaintiffs' assertion that the affidavit was unimportant and not harmful is belied by the record. *See* RR 9:196-97 (colloquy between Plaintiffs' counsel and the trial court regarding the affidavit, in which counsel emphasized the importance of the affidavit and the court observed that Plaintiffs were "enthusiastic" about it).

Plaintiffs were indeed enthusiastic about the Carroll Affidavit. They chose to read the Affidavit into the record, without cross examination, context, or rebuttal, *to rest their case*. Indeed, unlike ordinary testimony, the Carroll Affidavit was a trial exhibit that the jury could review. They cannot now credibly claim this was not harmful evidence.

The affidavit was also inadmissible hearsay. Plaintiffs argue that the affidavit was admissible under Texas Rule of Evidence 803(8)(C) because it allegedly states facts that resulted from an investigation made pursuant to authority granted by law. *See* Appellant's Brief at 33.[6] However, the Carroll Affidavit does not meet this hearsay exception for several reasons.

First, the Affidavit did not result from an independent government investigation, but rather was prepared for a civil lawsuit in which the government

---

[6]    Plaintiffs' argument on page 33 of their brief quotes all of Rule 803(8), but appears only to argue that the third exception, under provision (C), applies.

26

is not even a party. Second, the preparation of affidavits to support a party's position in a civil lawsuit is not part of the authority granted by law to Ms. Carroll.

Finally, Ms. Carroll's statement that 109 Ranger Creek Road was not within any business or residence district of the City is not a factual finding, but is a conclusion of law based on her uncross-examined interpretation of section 541.102(2). Rule 803(8) only excepts "factual findings" from the hearsay rule, not conclusions based on the interpretation of a law or statute. In this regard, the United States Court of Appeals has held that the corresponding federal rule, Fed. R. Evid. 803(8)(C), "does not provide for the admissibility of the legal conclusions contained within an otherwise admissible public report." *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302 (11th Cir. 1989); *see also Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010) and *Zeus Enters., Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 243 (4th Cir. 1999).

For these reasons, the Carroll affidavit does not support the jury's finding in Question 1 and the trial court *reversibly* erred in admitting it.

### E. Defendants Did Not Waive their Objection to the Trial Court's Erroneous Submission of an Unsupported Negligence *Per Se* Claim and Such Error is Reversible.

Plaintiffs wrongly contend that Defendants did not preserve their complaint that the trial court erred in submitting the Plaintiffs' negligence *per se* claim to the jury in Questions 1 and 2. To the contrary, Defendants objected both in writing and orally to the submission of Questions 1 and 2 and their instructions on the ground that the evidence was insufficient to support their submission. II CR 145-

27

46 (Objections Nos. 3 and 5); RR 10:46-47. Defendants' counsel also objected that the trial court's submission of the unsupported negligence *per se* claim in Questions 1 and 2 may adversely prejudice the jury answer's to the proportionate responsibility question. RR 10:50.

These objections are clearly adequate under Texas law. In *Thota v. Young, 366 S.W.3d 678, 689-91 (Tex. 2012)*, the Texas Supreme Court held that: (1) a no evidence objection is all that is necessary to preserve a complaint regarding the submission of a claim that is not supported by the evidence, and (2) a party is not required to point out to the trial court the problems that submitting a unsupported claim creates, which are discussed in *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000). The Texas courts of appeals agree that an objection to the submission of an unsupported claim or theory "also preserves error for any impact the wrongful inclusion has on the other charge questions," including the proportionate responsibility question and damage questions. *McFarland v. Boisseau*, 365 S.W.3d 449, 453-54 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Mo. Pac. R.R. Co. v. Limmer*, 180 S.W.3d 803, 822 (Tex. App.—Houston [14th Dist.] 2005), *rev'd on other grounds*, 299 S.W.3d 78 (Tex. 2009) and *Schrock v. Sisco*, 229 S.W.3d 392, 395 (Tex. App.—Eastland 2007, no pet.)).

Plaintiffs also argue that any error in submitting the unsupported negligence *per se* claim is not reversible error because the jury could not have been significantly influenced by the negligence *per se* claim in assessing proportionate

responsibility in Question 4.  This argument is not supported by Texas law or the trial record.

In *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 225-28 (Tex. 2005), the Texas Supreme Court held that the submission of a claim for liability that is not supported by the evidence is generally *reversible* if it cannot be determined whether that submission affected the jury's answer to the proportionate responsibility question.  "[U]nless the appellate court is '*reasonably certain* that the jury was not significantly influenced by issues erroneously submitted to it,' the error is reversible." *Id*. at 227-28 (emphasis added).  "Even if the jury could still have made the same apportionment of fault, the error in the question is nevertheless reversible . . . ." *Id.* at 226.  The Supreme Court held that the submission of an unsupported malicious credentialing claim was reversible error because it had no certainty that this claim did not influence the jury in the apportionment question. *Id*. at 227-28.  "If the jury's apportionment of liability could have been affected by an issue on which the trial court charged the jury but on which there was legally insufficient evidence, a new trial on the entire negligence claim is required." *Heritage Hous. Dev., Inc. v. Carr*, 199 S.W.3d 560, 570 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Romero*).

Plaintiffs argue that *Romero* is distinguishable because it involved the submission of an unsupported intentional tort, and that there is no reversible error when the unsupported claim is a negligence claim.  To the contrary, *Romero* makes no such distinction and the Courts of Appeals have not limited *Romero* to

29

unsupported intentional torts. *See, e.g., Limmer*, 180 S.W.3d at 828-29 (in case where the jury was required to apportion responsibility between the parties, the Court of Appeals held that error in submitting an invalid *negligence* theory to jury was reversible because the court was not reasonably certain that the jury was not influenced by that theory); *Benge v. Williams*, 01-12-00578-CV, 2014 WL 6462352, at *25 (Tex. App.—Houston [1st Dist.] Nov. 18, 2014, no. pet. h.) (holding that allowing the jury to consider an invalid *negligence* theory was reversible error because the court of appeals could not say that the jury was not significantly influenced by the invalid theory).[7]

This Court should find reversible error here because it cannot be certain that the jury, in apportioning responsibility between Mr. Leal and Mr. Rankin, was not influenced by its findings in Questions 1 and 2 that Mr. Leal failed to comply with the law and that this caused Mr. Rankin's injury. Generally, people consider someone who breaks the law more culpable than someone who is merely negligent. The jury heard evidence that Mr. Leal was an experienced, trained driver who made deliveries for a living. In finding that Mr. Leal parked illegally, the jury likely concluded that Mr. Leal knew or should have known that he was breaking the law. This Court cannot be reasonably certain that the jury did not hold Mr. Leal more culpable or responsible for his violation of the law than if they had

---

[7]    Plaintiffs also cite *Texas Mut. Ins. Co. v. Morris*, 287 S.W.3d 401, 431 (Tex. App.—Houston [14th Dist.] 2009), judgment rev'd, 383 S.W.3d 146 (Tex. 2012). Not only was that decision reversed, but it is not relevant because there was no proportionate responsibility question, and there was no possibility that the unsupported negligence theories influenced the jury's answers to other questions in the charge. *Id.* at 430.

30

merely found ordinary negligence. The consequences of this error are enormous because if the jury had found Mr. Leal 1% less responsible, the Rankins claims would have been barred. *See* TEX. CIV. PRAC. & REM. CODE §33.001.

**F. The Jury's Findings in Questions 2 and 3 (Proximate Cause) and Question 4 (Mr. Rankin Was Only 50% Responsible) Are Not Supported by Sufficient Evidence.**

Plaintiffs argue that Defendants waived the argument that the evidence is insufficient to support the jury's finding in Questions 2 and 3 that the negligence of Roland Leal proximately caused the occurrence because their Proposed Jury Charge included questions regarding negligence and proximate cause. However, Defendants' Proposed Jury Charge states:

> Defendants object to the submission of each of the Plaintiffs' claims against them because such are not supported by legally sufficient evidence. Defendants reserve their right at the charge conference(s) to object to any of the questions or instructions proposed herein. Defendants do not concede that any of these questions or instructions that submit Plaintiffs' claims will be supported by the evidence.

II CR 120. Defendants included the negligence questions in their proposed charge solely to explain their position as to the correct legal form of these questions, not because they agreed that they should be submitted. And Defendants clearly objected to Questions 2 and 3 in the charge conference. RR 10:47-48.

Plaintiffs assert that there are testimony, video, and photographs that indicate "it was very difficult to see a truck parked in that exact location until mere seconds before coming upon it." Appellees' Brief at 45. However, none of the Plaintiffs' record cites support their assertion. Plaintiffs reference their Exhibits 22 and 29, but these exhibits were not admitted and are not in the record. RR 1:30-31.

31

Plaintiffs also reference six photographs (Defendants' Exhibits 99F, 99G, and 144E-144H), but none of them indicates that the package car (which was parked in the same location as Mr. Leal parked his car) was difficult to see. To the contrary, Defendants' Exhibits 144A-E, contained in the Appendix to this brief, show that the car is plainly visible from 200 to 1000 feet away.

A motorist "is not required to anticipate negligence or other unlawful conduct on the part of another." *Turner v. Cruz*, 2010 WL 5545392, *4 (Tex. App.—San Antonio Dec. 29, 2010, no pet.). According to Plaintiffs' counsel, to not see the car, Mr. Rankin would have had to have been looking down at the pavement for over a minute. RR 10:103. He kept no lookout for construction, stopped vehicles, or people or animals crossing the road. Extreme negligence of this kind is not foreseeable and Mr. Leal had no duty to anticipate it. Appellees' Brief does not address this argument.

When the actions of Mr. Rankin and Mr. Leal are compared, no jury could reasonably conclude that Mr. Rankin was not more responsible for the accident than Mr. Leal. Mr. Rankin could see that there were residences on the road where vehicles enter and exit the roadway, and regularly stop to deliver mail or pick-up garbage, but he kept no lookout and rode with his head down for over a minute. RR 5:118-19; RR 6:196, 198-99; RR 10:103. In contrast, Mr. Leal parked his car to make a delivery that took less than two minutes, with the hazard lights flashing, where it was visible for thousands of feet, and only partially obstructed one lane (leaving 20 feet of open roadway). RR 9:90-91, 95, 103. The jury's finding of

equal responsibility was based, not on the evidence, but on the erroneous negligence *per se* jury instructions and on sympathy for the Rankins.

Respectfully submitted,

**KING & SPALDING LLP**

/s/ H. Victor Thomas
W. Randall Bassett
*Pro Hac Vice Pending*
Bradley W. Pratt
*Pro Hac Vice Pending*
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

H. Victor Thomas
Texas Bar No. 19851500
Thomas Michael Gutting
Texas Bar No. 24067640
King & Spalding, LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002-5213
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

and

Ricardo R. Reyna
State Bar No. 16794845
Audrey A. Haake
State Bar No. 08658100
BROCK PERSON GUERRA REYNA, P.C.
17339 Redland Road
San Antonio, Texas 78247-2302
Telephone: (210) 979-0100
Facsimile:  (210) 979-7810

**Counsel for Appellants United Parcel Service, Inc. and Roland Leal**

34

## CERTIFICATE OF COMPLIANCE

I certify that on February 19, 2015, that this Reply Brief was produced on a computer and contains 7,414 words, excluding the caption, table of contents, index of authorities, and Appendix, and thus does not exceed the 7,500 word limit provided for by Tex. R. App. P. 9.4(i).

/s/ H. Victor Thomas
H. Victor Thomas

## CERTIFICATE OF FILING AND SERVICE

I certify that on February 19, 2015, I used the Court's electronic case filing system to file this Reply Brief and to serve this document on the counsel for appellees:

Doug Perrin
Mark Perrin
The Perrin Law Firm
325 N. Saint Paul St., Suite 600
Dallas, TX 75201-3828

Peter D. Marketos
Reese Gordon Marketos LLP
750 N. Saint Paul St., Suite 610
Dallas, Texas 75201

/s/ H. Victor Thomas
H. Victor Thomas

# Appendix of Photographs of Parked UPS Package Car

# (Defendants' Exhibits 144A-H).





300 FEET

300FT .jpg

EXHIBIT
144-B
Blumberg No. 5119



400 FEET

400FT.jpg

EXHIBIT
144-C



500FT.jpg

EXHIBIT

144-D



600FT.jpg



700 FEET

EXHIBIT 144-F

700FT.jpg



900 FEET

900FT.jpg

EXHIBIT
144-G

42



1000 FEET

1000FT.jpg

EXHIBIT
144-H